**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| MICHAEL HARMAN, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| TRINITY VALLEY | § | |
| COMMUNITY COLLEGE, | § | |
| | § | |
| *Defendant.* | § | |

---

## PLAINTIFF'S ORIGINAL COMPLAINT

---

NOW COMES Michael Harman, Plaintiff in the above-styled and numbered cause, and files his Original Complaint against Defendant Trinity Valley Community College. Plaintiff would respectfully show the Court the following:

### I.  THE PARTIES

1.1    Plaintiff Michael Harman ("Plaintiff" or "Harman") is an individual residing in Henderson County, Texas.

1.2    Defendant Trinity Valley Community College ("Defendant" or "TVCC") is a college or college district organized under the laws of the State of Texas for the purpose of operating a community college system serving communities in several Texas counties, including all of Henderson County, most of Kaufman County, and parts of Anderson, Van Zandt, Hunt, and Rains County. The address of Defendant's administrative office is 100 Cardinal Drive, Athens, Henderson County, Texas 75751. Defendant may be served with process by serving its President, Dr. Jason Morrison, at the foregoing address.

## II.  JURISDICTION AND VENUE

2.1     This Court has jurisdiction over this action under 28 U.S.C. § 1331 because one or more of Plaintiff's causes of action is created by federal law, arising from and through the First, Fourth, and Fourteenth Amendments to the United States Constitution, for which 42 U.S.C. §§ 1983 and 1988 provide Plaintiff standing and remedies. This Court has supplemental jurisdiction over Plaintiff's state law claim under 28 U.S.C. § 1367.

2.2     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as all or part of Plaintiff's claims accrued in Henderson County, Texas, which is within this district and division.

## III.  FACTUAL BACKGROUND

### A.     OVERVIEW

3.1     Michael Harman was a professor at Defendant's Athens campus for twelve years. He taught biology, and anatomy and physiology, and was non-renewed in retaliation for his exercise of First Amendment rights and rights granted to Texas citizens under the Texas Public Information Act.  More specifically, Harman believed he was being underpaid, and that TVCC administrators were not complying with school policies, and he made open records requests to determine whether his concerns were justified.

3.2     When Harman began trying to determine whether he was being singled out for unfavorable treatment, his efforts hit such a nerve that the administrators proved his point for him. With unconscious irony, administrators derided his concerns as "conspiracy theories," even as they literally conspired against him. Their emails document efforts to build a file to take to their legal counsel, who had initially told them they had nothing "actionable" against Harman. Their only internal complaint against him was dismissed. Nevertheless, they persisted – and not in a good way. They set him up, targeted him, deprived him of his academic freedom, and changed their

story about reasons for ending his employment. They deprived him of access to their public campuses, with no due process, and they breached his contract.

3.3    Emails among the TVCC administrators document their intentions and conduct, none better than the following, from Rodney Burrus, of TVCC's human resources department:

> Anyway, Janene and I did speak to legal counsel and she did not seem to think that we had anything actionable at this time. I told Janene, at least it is documented that we spoke to Leigh so we are being proactive.
>
> My thoughts, Michael made a big stink about his class and other allegations and I completed an investigation and thought that I put it to rest. However; this is his second attempt to try to 'topple' Administration. I believe that we should comply with his request to access information, then let him know that we have been complicit in his harassment long enough, that we are not going to allow ourselves to enable his conspiracy theories and that his manner towards students, faculty and staff have digressed to the point that Administration must explore other options.
>
> I can tell you that Janene asked for me to get e-mails, statements or other documentation from Holley Collier, John Placyk, Erica Richardson, yourself and anyone else that might have access, to show a patterns of passive aggressive to antagonistic behavior.
>
> Rod Burrus
> Assistant Director of Human Resources

A true and correct copy of Burrus' email is attached hereto as <u>Exhibit A</u> and incorporated herein by this reference.

## B.    BACKGROUND AND PLAYERS

3.4    Harman (hereafter "<u>Plaintiff</u>") was an employee of TVCC for twelve years, ending on or about May 31, 2024. He taught Biology, including Anatomy and Physiology, at TVCC, where he received rave reviews from both his students and Science Department Chair, John Placyk ("<u>Placyk</u>"). Placyk later became one of those working against Plaintiff, along with Assistant Human Resources Director Rodney Burrus ("<u>Burrus</u>"), Director of Human Resources Janene Dotts ("<u>Dotts</u>"), and Vice President of Instruction Kristin Spizzirri ("<u>Spizzirri</u>").

3.5     Burrus and Spizzirri were later asked to resign, but between Fall 2022 and May 2024, they were among the administrators of TVCC whose actions against Plaintiff form the background of this lawsuit. Others who targeted and retaliated against Plaintiff were Associate Vice President of Academic Affairs Erica Richardson ("Richardson"), Associate Vice President of Instructional Innovation and Support Holley Collier ("Collier"), and Joanna Fritz ("Fritz"), who was both Director of Marketing and Communication and TVCC's Public Information Officer ("PIO"). Burrus, Spizzirri, Placyk, Richardson, Dotts, and Fritz, collectively referred to herein as the "Administrators," at all times acted as policymakers, or as designees of TVCC's policymakers, and acted under color of law. Former TVCC president Dr. Jerry King ("King") ratified the actions of these Administrators by dismissing Plaintiff's initial grievance. Current TVCC President Dr. Jason Morrison ("Morrison") acted on Placyk's recommendation to non-renew Harman's 2023-2024 contract, and the TVCC Board of Trustees (the "Board") upheld such non-renewal.

3.6     Plaintiff's sterling credentials and classroom performance provided no legitimate reason to non-renew his contract, terminate his employment, "let him go," or otherwise fulfill the Administrators' vendetta against a gadfly who asked too many questions. The First Amendment protects the activity which so enraged the Administrators, including Plaintiff's open-records requests as well as his complaints and inquiries regarding inconsistent application of policies, or outright underpayment of faculty. TVCC's non-renewal of Plaintiff is solely in retaliation for him availing himself of his rights under the First Amendment.

C.      **EVENTS RELEVANT TO ALL CAUSES OF ACTION**

        1.      **Plaintiff's dispute with TVCC over his Spring 2022 overload pay**

3.7     In January of 2022, Spizzirri and Richardson replaced TVCC's existing policy regarding faculty teaching loads and overloads with a new procedure establishing that faculty loads

and overloads were to be determined on the Thursday of the first week of classes (the "Load Policy"). Prior to the implementation of the Load Policy, it had been customary at TVCC, for at least the previous ten years, for the Associate Vice President of Academic Affairs or the Department Chair to approach professors one week before the start of the semester to discuss their options if one of their overload sections did not reach the minimum enrollment, that is, "did not make." These options included: (1) for the professor to be paid by the head, which would be a lesser amount than would be paid for teaching a full class, or (2) for the professor to drop the class if the class did not make.

3.8     In Plaintiff's past experiences at TVCC, when Spizzirri or Dr. Wendy Elmore had been Associate Vice Presidents of Academic Affairs, enrollment was determined the second day of the term. This was for determining extra pay, if enrollment for a class had exceeded the cap, but also for determining whether a class had made or not. If the number of students in the class had decreased to below the minimum number of students necessary for the class to make, the faculty member's stated preference from the previous week's inquiry – to drop or to teach for less pay – would be honored.

3.9     After institution of the Load Policy, Richardson informed TVCC faculty on February 1, 2022, that information for the Spring semester was now loaded into MyCardinalConnect, and that TVCC faculty for the Athens, Terrell, and Palestine campuses were to check and confirm the enrollment numbers listed.

3.10    MyCardinalConnect is a software platform from which faculty access not only enrollment and attendance information, but also their overload assignments, including what they will be paid. When Plaintiff reviewed MyCardinalConnect on February 1, 2022, he immediately informed Richardson that he was not being paid his full overload amount for teaching BIOL 2402

ATH07 for the Spring 2022 semester. In response, Richardson informed Plaintiff that the enrollment, and therefore the amount of his pay for the class, was determined on Friday, January 21, 2022 (contrary to the Load Policy, which would have been the day before). Spizzirri added to the conversation stating that enrollment numbers were determined on Thursday of the first week of classes, January 20, 2022, per the Load Policy.

3.11    Upon information and belief, Plaintiff had six students, the minimum for a full load of face-to-face classes that semester, as of the Thursday of the first week of classes, January 20, 2022. The next day, Friday, January 21, 2022, one of Plaintiff's students dropped his BIOL 2402 ATH07 class, bringing the total number of students in the class below the minimum amount required for the class to make. Despite Plaintiff's assertions that his class had made based on the January 20th deadline to finalize overloads, Plaintiff was not paid the full amount for his overload in Spring of 2022. Instead, Plaintiff was paid per student for his BIOL 2402 ATH07 class, which was less than he was owed based on an enrollment of six students as of January 20, 2022.

3.12    Spizzirri disputed Plaintiff's assertion that he had six students on his BIOL 2402 ATH07 roster, claiming that there were only five students on the roster on January 20. However, the official date the student dropped appeared to have been changed in the TVCC system to an earlier date. Furthermore, when Plaintiff tried to discuss his load size with Spizzirri, she would not meet or put anything in writing. Because Plaintiff had verified that he had six students enrolled in his BIOL 2402 ATH07 class and was told the class would make, he appealed his complaint up the chain of command, from Placyk, to Richardson, and finally to Spizzirri, but to no avail. According to Placyk, there were no issues with Plaintiff's overload for Spring of 2022, and Spizzirri wrote in an email to the other administrators that they should apologize to Plaintiff for their lack of proper communication with him, but Plaintiff was still not paid the full overload amount. Plaintiff

ultimately appealed to HR Director Dotts, sending monthly follow-up emails, but Dotts did not respond until the third month.

3.13    Plaintiff was not notified that he would not be paid the full amount for his overload in Spring of 2022 until the third week of the semester. As a result, Plaintiff was never given notice or a choice as to whether he wanted to teach per student for this class or to cancel the class. As a professor who cares deeply for his students and is passionate about his profession, Plaintiff taught the class—even though he was not afforded proper notice of overload calculations and was not given the opportunity to decide whether to continue to teach the class for the semester.

3.14    At this point, after ten years at TVCC, Plaintiff made his first requests for records to TVCC under the Texas Public Information Act ("TPIA"). This effort to determine how the new Load Policy had been applied in his case, and his subsequent efforts to follow up on questions to which TVCC and its Administrators refused to provide answers, put a target on his back.

### 2.    Plaintiff's Open Education Resource ("OER") certification issues

3.15    OER classes are classes where students do not have to buy textbooks or other educational materials because the required readings or references are "open source," and can be obtained for free. TVCC's process for permitting online OER classes includes internal certification, although that certification process has changed over the years. Prior to the 2022 Summer term, TVCC faculty were told that the process then in effect would be altered for the summer, and that if faculty designated a class as OER, the class would be listed as such on the summer schedule, without need for certification. The reason given was that Holley Collier ("Collier"), Associate Vice President of Instructional Innovation and Support, would not be able to certify most or all summer classes as to OER status. It turned out that this modification was applied to all TVCC faculty except Plaintiff.

3.16    When Plaintiff saw that his summer classes were not given OER status, but other faculty's classes were, he and Placyk asked for this to be remedied. However, Spizzirri advised them that it was a mistake to have any of the other courses listed as OER, and that those designations would be pulled from the class registry. That never happened. Instead, only Plaintiff's courses remained without an OER designation. Not until a week before the 2022 Summer term started did Plaintiff receive his OER designation for his summer classes.

3.17    Plaintiff asked Spizzirri and Richardson why his classes did not receive an OER designation originally. Their response was they pulled the OER designation from all TVCC faculty courses that were not certified, and department chairs were informed of this and told by Spizzirri and Richardson to relay that information to their faculty. However, no such directive ever existed, as evidenced by Placyk's agreement with Plaintiff that his classes should be designated OER.

3.18    In May of 2022, Collier scheduled a meeting with some faculty, including Plaintiff, to discuss OER certification. Spizzirri and Richardson usurped the meeting, in an obvious effort to avoid discussion of OER certification. Nonetheless, Plaintiff returned the meeting to its original purpose, and specifically brought up his concerns about the lack of transparency from Spizzirri and Richardson to TVCC faculty concerning OER course designations. Plaintiff was direct and professionally conveyed his frustrations to Spizzirri and Richardson.

3.19    After the OER meeting, Spizzirri and Richardson verbally complained about Plaintiff to Assistant Director of HR Burrus, alleging that Plaintiff displayed unprofessional and violent behavior in the meeting. Specifically, they alleged that he was "borderline inappropriate," raised his voice, interrupted administrators, and incessantly clicked his pen during the meeting. Ultimately, these false allegations by Spizzirri and Richardson became further exaggerated in the later Memo of Counseling (described herein below) as Plaintiff having cut off supervisors, yelled,

slammed things, and pounded fists. Burrus investigated Spizzirri's and Richardson's complaints, but never found evidence of unprofessional and violent conduct by Plaintiff. Placyk specifically defended Plaintiff, stating "At the OER meeting, Michael was understandably frustrated and direct, but I do not believe he was inappropriate in wanting straight answers."[1] No witness substantiated Spizzirri's and Richardson's complaints. Although the OER meeting was scheduled to be recorded, TVCC failed to record it.

### 3.	Statements directed at Plaintiff during the Fall 2022 Convocation

3.20	TVCC's Fall 2022 Convocation took place on August 15, 2022. During the Convocation, Spizzirri made two statements at the podium to the entire TVCC faculty in direct reference to Plaintiff: (1) "the difference between the Faculty Retreat and the Faculty Association is that you do not go to the Faculty Association about your overload pay" and (2) "if you do not come to work with passion for TVCC you should look for another job." These statements were direct threats towards Plaintiff to change his behavior and to stop investigating the discrepancies in overload pay and OER certification that had adversely affected Plaintiff during the 2022 Spring and Summer terms. In addition, her statements conveyed a message with a chilling effect on any other faculty who would dare to question the administration.

### 4.	Plaintiff requests a meeting with TVCC's HR to discuss his concerns about overload calculations, and seeks public records to be used in the meeting

3.21	On August 17, 2022, Plaintiff approached TVCC's human resources department regarding his concerns with TVCC's method of overload calculations. Specifically, Plaintiff

---

[1] A true and correct copy of Placyk's June 5, 2022 email to Burrus is attached hereto as <u>Exhibit B</u> and incorporated herein by reference. Placyk stated that he was "writing today in support of Michael Harman's claims 1) regarding his behavior at a recent OER information meeting and 2) in regarding being underpaid for the Spring 2022 semester." Placyk also stated that Harman seemed "to be a target of [Richardson and Spizzirri's] bad policies," but that Placyk himself considered retaliation a possibility and wished the information he was providing to be kept confidential.

wanted to address the incident that occurred in the 2022 Spring and Summer terms, where he was not paid the full amount for his overload.  Burrus, Assistant Director of TVCC's HR, set up a meeting with Plaintiff to hear his complaint.

3.22    In preparation for the meeting, Plaintiff initiated an Open Records Request (the "Records Request") on September 19, 2022, pursuant to the TPIA. His Records Request, directed to Fritz, as the TVCC Public Information Officer ("PIO"), sought (1) Faculty Overload Contracts from Colleague[2] showing what faculty were actually paid for each class, not scheduled to be paid; (2) rosters from Colleague containing all students who were ever enrolled, including any dropped or withdrawn students (with dates); (3) complete rosters from the end of the Spring of 2022 and Summer of 2022 classes; and (4) the current rosters for Fall 2022 classes.

3.23    On September 24, 2022, PIO Fritz produced documents; however, the documents were not responsive to Plaintiff's Records Request. On September 26, 2022, Plaintiff reiterated his Records Request, clarifying what was requested in his initial Records Request to Fritz. After ten business days, Plaintiff still had not received the information requested from his second Records Request, was not informed of a date and time by which he would receive the requested documents, did not receive any request for clarification, and did not receive any notice from the college that it intended to file a request for opinion with the Attorney General's office. In short, TVCC had failed to comply with Sections 552.221 and 555.301 of the TPIA. As a result, Plaintiff reached out to PIO Fritz on October 11, 2022, to get an update of the status of his second Records Request. Fritz

---

[2] Unlike MyCardinalConnect, which could be accessed by faculty, Colleague is a scheduling software used by TVCC, but which Plaintiff, as a faculty member, could not access directly. Thus, he sought the information in accordance with his right as a citizen under Section 552 of the Texas Government Code (the Texas Public Information Act, or "TPIA").

again responded with documents that were not responsive, and claimed that TVCC did not possess the information Plaintiff sought.

3.24    Plaintiff again informed Fritz that the information provided was not responsive to his second Records Request. For clarification, Plaintiff attached pictures of the information he wanted from the college's scheduling software, Colleague, and reasserted his Records Request. Frustrated by TVCC's lack of diligence in producing information responsive to his second Records Request, he implored Fritz, "[w]hy would . . . [TVCC] not wish to show records that according to the administrators show [Plaintiff] was paid fairly?"

3.25    Once again, after ten business days, Plaintiff did not receive the information he requested for his third Records Request, any notification of when responsive documents would be provided, any request for clarification, or any notice from the college that it intended to file a request for opinion with the Attorney General's office, as required by the TPIA. In response to TVCC's noncompliance with the TPIA, Plaintiff followed up with Fritz on October 31, 2022, to check in on the status of his third Records Request. Plaintiff addressed the importance of TVCC producing information responsive to his Records Request to Fritz, because he needed the information to address a payroll matter. By not providing the correct material, she and TVCC were delaying the meeting he had planned with Burrus to fix his payroll issue. Plaintiff received no response from Fritz that day.

3.26    Plaintiff followed up the next day, and Fritz responded stating that the academic team had been attempting to gather all information sought from Plaintiff's Records Request, and that TVCC had provided everything available. The "academic team" who gathered the information that was not responsive to Plaintiff's Records Request included Spizzirri, Richardson, and one other administrator, an assistant vice-president from the unrelated department of workforce

education, Kelly Townsend ("Townsend").[3] After nearly six weeks of attempting to obtain information responsive to his Records Request, Plaintiff agreed to schedule the HR meeting to discuss his overload pay issues—even without the material documents he had requested from TVCC. The meeting was set for December 8, 2022, to include Burrus, Placyk, Richardson, Spizzirri and Plaintiff.

> **5.     TVCC administrators had already begun to collect information on Plaintiff, to find good cause to dismiss him, while Plaintiff sought information about overload pay through his Open Records Requests**

3.27    On September 21, 2022, only *two days* after Plaintiff's Records Request was submitted to TVCC, Burrus reported to Spizzirri that he and Janene Dotts, Director of TVCC's HR, had spoken with TVCC's legal counsel, Leigh Porter ("Porter"), about Plaintiff. Although Porter did not seem to think that TVCC had any "actionable claim," Burrus was glad they had been "proactive." Burrus's email to Spizzirri discussing Plaintiff and how to respond to his Record Requests reads as follows:

---

**From:** Burrus, Roddy <roddy.burrus@tvcc.edu>
**Sent:** Wednesday, September 21, 2022 10:42 AM
**To:** Spizzirri, Kristin <kspizzirri@tvcc.edu>
**Cc:** Dotts, Janene <janene.dotts@tvcc.edu>
**Subject:** Harman

So, it was hot and we had other activities going on at the time.  As I mentioned, Janene had talked to Melinda Berry and she said that not only could she take referrals for students but also for faculty and staff.

I can tell you that in a previous conversation, John Playck said and I quote, *"I need to talk to Thomas Booth to see if Michael has access to any guns."*  Erica Richardson said in the same conversation, and I am paraphrasing here, *"Sometimes when I leave late at night it makes me nervous, he could be waiting for me."*  Anyway, Janene and I did speak to legal counsel and she did not seem to think that we had anything actionable at this time.  I told Janene, at least it is documented that we spoke to Leigh so we are being proactive.

---

[3] Along with Spizzirri, Townsend was subsequently given the choice between resignation and termination.

My thoughts, Michael made a big stink about his class and other allegations and I completed an investigation and thought that I put it to rest.  However; this is his second attempt to try to 'topple' Administration.  I believe that we should comply with his request to access information, then let him know that we have been complicit in his harassment long enough, that we are not going to allow ourselves to enable his conspiracy theories and that his manner towards students, faculty and staff have digressed to the point that Administration must explore other options.

I believe that questions lead to a heightened sense of accountability because we know someone is watching and keeping us on the straight and narrow, however; when the needs of the one outweigh the needs of the many (students, faculty & staff) then a change needs to be made.

There again, my thoughts.......

I can tell you that Janene asked for me to get e-mails, statements or other documentation from Holley Collier, John Placyk, Erica Richardson, yourself and anyone else that might have access, to show a patterns of passive aggressive to antagonistic behavior.

Rod Burrus
Assistant Director of Human Resources
903-670-2649
rod.burrus@tvcc.edu

Exhibit A.

3.28    Several parts of this email are noteworthy. First, of course, that HR has gone to a lawyer to see if a faculty member making a TPIA request has done something "actionable." Next, Plaintiff's efforts to look into possible underpayment are characterized as a "second attempt to try to 'topple' Administration." Burrus recommends "we should comply with his request to access information" – which TVCC was legally required to do anyway – but to "let him know that we have been complicit in his harassment long enough." Section 552.223 of the TPIA requires uniform treatment of requests, and prohibits tying employment to requests, or treating requests by employees differently from any other request. TVCC utterly ignored this requirement, and by this email, put in writing that it had no intention of treating Plaintiff's requests in a neutral fashion.

3.29    Moreover, this email was sent only two days after Plaintiff's initial Records Request, but Burrus and Dotts in HR were already looking to "explore other options." They began

to collect "e-mails, statements or other documentation" from Collier, Placyk, Richardson, Spizzirri, "and anyone else that might have access," to build their case against Plaintiff.

3.30    On September 28, 2022, Placyk informed Burrus that Plaintiff was "butting heads with quite a few students this semester," but that Placyk wanted Burrus to know about one student issue in particular. In response, Burrus brought Placyk into his and Dotts' efforts to find documents, student statements, complaints from other faculty, or "email trails" that would "shed some light" on what Burrus called Plaintiff's "conspiracy theory idealizations or uncooperative and non-participative issues."

**From:** Burrus, Roddy
**Sent:** Wednesday, September 28, 2022 2:57:48 PM
**To:** Placyk, John
**Cc:** Richardson, Erica
**Subject:** RE: Harman

I do appreciate being kept in the loop.

Last week Janene asked for me to reach out to a select few people to see if they were in possession of any documentation whether it be student statements, complaints from other faculty members or e-mail trails that would shed some light on his conspiracy theory idealizations or uncooperative and non-participative attitudes.

The rationale is that while we are all in agreement that Michael Harman has behavioral issues, none of the students are willing to step forward.  We cannot begin to improve the circumstances for our students and/or create a more suitable working situation for those faculty and staff members that must interact with him without documentation.

For instance, Dr. Spizzirri and Kelly Townsend spent a great deal of time pulling information together regarding Michael's most recent public information request.  It is my intention to provide the information that he requested then let him know that he is becoming somewhat of a nuisance and while we respect his quest for clarity, it is becoming less for his personal edification and tracking more frequently into harassment.  Michael has worked at TVCC long enough to know how our processes work and in my opinion, he is single handedly trying to discredit this administration.

I mentioned to K. Spizzirri that Michael has rights, but she does as well.  An individual may question decisions that are made but when those questions become pervasive and invasive enough to unsettle the operations of the organization, then she has every right to feel like she is being harassed.

With that said, I ask that you look through your documentation whether on paper or electronic and send them my way.  If something is recent enough that you remember the dates and times, please just write out your accounting of the occurrences and send them my way.

I appreciate your help.

Rod

Placyk was sympathetic to Burrus and Richardson's complaints about Plaintiff. He specifically lamented that Plaintiff meets academic standards and that academic freedom protects the content of his classes and how he grades. Thus, Placyk had no basis to put him on a performance improvement plan, "unless I'm missing something."

> **From:** Placyk, John <john.placyk@tvcc.edu>
> **Sent:** Wednesday, September 28, 2022 3:06 PM
> **To:** Burrus, Roddy <roddy.burrus@tvcc.edu>
> **Cc:** Richardson, Erica <erichardson@tvcc.edu>
> **Subject:** Re: Harman
>
> Erica just told me about the public information request.  I really thought he was done with that fight.   I believe I told you that I thought it would just be a matter of time before he reverted to his old behavior.  It sounds like hie may have last a little over a month.  :(
>
> Most of his problems with students this semester have been related to his academic freedom in terms as how he teaches his class.  He meets ACGM standards, so I can't say much about additional content-related material he goes over or how he grades and administers evaluations, as that's up to him, so I have nothing I feel that I can develop a PIP for at this time unless I'm missing something.
>
> -John

3.31     Furthermore, Placyk communicated with Burrus on September 29, 2022, about how Plaintiff was irritating other faculty. These administrators, instead of addressing any actual performance issue through normal avenues, exchanged emails with the subject line simply "Harman." They mocked him for believing in conspiracies, while they assembled their dossier against him – Burrus literally described "printing each [email] and placing them in a folder to submit to legal counsel." The history chair told Placyk, after Plaintiff had inquired to him concerning the overload policy, "[y]our boy is driving me insane with these conspiracy theories;"

Placyk emailed Burrus, "He's a lunatic!" and Burrus stated, "I don't think that anyone would argue with you on that point."[4]

**From:** Placyk, John <john.placyk@tvcc.edu>
**Sent:** Thursday, September 29, 2022 9:35 AM
**To:** Burrus, Roddy <roddy.burrus@tvcc.edu>
**Cc:** Richardson, Erica <erichardson@tvcc.edu>
**Subject:** Fw: Harman

FYI. ...message below from another chair.

Today's conspiracy theory was that despite him wearing red on Wednesday and having his picture taken and sent to whoever posts those pictures of folks wearing red that they intentionally do not post his picture. So, he complained to Jennifer Hannigan about it and thinks that's why they posted his picture this week. He wears red just to test his theories and he thinks it irks the administration that he's so surly yet wears college shirts.

I knew him laying low won't last long. He doesn't have it in him to just be and not think the world is against him.

He was in my office yesterday for about an hour talking about nonsense. Followed me to the break room while I microwaved my lunch and then followed me back to my office while I'm standing with the door almost closed still not letting me eat until I finally closed the door and left it closed for a while so I could eat in peace. Most of what he talked to me about yesterday was related to how he challenged authority at the other places he's worked and showed them all how they were wrong and he was right. ...of course, he's no longer working for any of them, is he? Good grief.

-John

---

[4] In another email, with the subject line "the Harman Effect," Placyk, while Plaintiff believed him to be on his side, wished the others a "Harman-free weekend."

**From:** Allen, Daniel
**Sent:** Thursday, September 29, 2022 9:21 AM
**To:** Placyk, John
**Subject:** Harman

Your boy is driving me insane with these conspiracy theories.

Dr. Cade Allen
Trinity Valley Community College
History Department

| | |
|---|---|
| **From:** | Burrus, Roddy |
| **To:** | Placyk, John |
| **Cc:** | Richardson, Erica |
| **Subject:** | RE: Harman |
| **Date:** | Thursday, September 29, 2022 10:00:04 AM |

I don't think that anyone would argue with you on that point.

Rod

**From:** Placyk, John <john.placyk@tvcc.edu>
**Sent:** Thursday, September 29, 2022 9:59 AM
**To:** Burrus, Roddy <roddy.burrus@tvcc.edu>
**Cc:** Richardson, Erica <erichardson@tvcc.edu>
**Subject:** Re: Harman

If ANY of my people are close to the minimum number of students needed for a class to make as we approach the cut off for when that decision is made, I ask them that question. ...NOT just him. He's a lunatic!

-John

**From:** Burrus, Roddy
**Sent:** Thursday, September 29, 2022 9:57:03 AM
**To:** Placyk, John
**Cc:** Richardson, Erica
**Subject:** RE: Harman

I did speak to Michael last night for about thirty minutes on the phone.  I kept it conversational in nature.

He mentioned that out of all of the faculty that worked at TVCC, he was the only person that

received a call asking if his class load dropped below 12, if he would teach the class on a per-head basis.  Basically, that he was being singled out.  My response to him was, "you are being singled out. Your constant questioning has people on pins and needles, so of course they are going to communicate in such a manner."

Anyway, thanks for keeping me apprised, I am printing each and placing them in a folder to submit to legal counsel.

Rod

3.32    During the 2022 Fall semester, the Administrators made a concerted effort to document any potential issue they had with Plaintiff. What was collected that Fall were emails about faculty having problems with Plaintiff discussing his overload pay issues with TVCC and TVCC administration having problems with Plaintiff making multiple open records requests—a right granted under Texas law. Furthermore, despite the purported complaints from TVCC faculty and students, Plaintiff received immaculate reviews from his Department Chair, Placyk, and his students in the 2022 Fall evaluations.[5] Given these reviews, it does not appear that Plaintiff's behavior impacted the operations at TVCC nor his ability to teach his students. He did not disrupt

---

[5] A true and correct copy of Plaintiff's October 2022 evaluation by his department chair, including attached student evaluations, is attached hereto as Exhibit C, and incorporated by reference.

his own or any other classes, nor did he encourage others to do so. Furthermore, the positive evaluations from both his department chair and students demonstrate that he was more of an asset than a liability to TVCC—directly contradicting Burrus's assessment of Plaintiff.

**6.     Plaintiff's December 8, 2022, grievance meeting against TVCC unexpectedly turns into a TVCC disciplinary hearing against Plaintiff.**

3.33    On December 8, 2022, in an effort to resolve his pending grievance in accordance with TVCC Board Policy DGBA(LOCAL), Plaintiff met with Burrus, Placyk, Richardson, Spizzirri, and Dotts. The email exchange setting up such meeting began with a November 17, 2022, email from Plaintiff with the subject line "RE: Overload Pay":

> Even though they are refusing to fulfill my public information act request, I am still willing to meet. My classes are M-Th 9:25-12:05. I have finals at those times on Tuesday and Wednesday, Nov. 29 & 30. If I remember correctly: you, John Placyk, Erica, and me. What about inviting Kristin? She was involved in the decisions and emails. Please schedule as available.

Burrus responded in an email, with the subject line still "RE: Overload Pay",

> Good Afternoon, After speaking to the interested parties, I believe that we should be ready to discuss after Tuesday, December 6th. We wanted to get everything from this semester closed out prior to our meeting.

The only meeting set following these emails was the one on December 8. No correspondence informed Plaintiff that his "behavior" would be the subject of the meeting. Plaintiff reasonably expected to discuss his concerns about TVCC's overload pay calculations, and to a lesser extent, issues he had with TVCC's OER certification. Plaintiff attended the meeting without a representative present because he had anticipated the discussion would concern issues he had raised with TVCC.

3.34    However, when the meeting commenced, Burrus informed Plaintiff that this meeting was a disciplinary hearing to discuss a Memo of Counseling (the "Memo") that TVCC's HR issued against Plaintiff. Prior to this meeting, Plaintiff was never notified of the Memo's

existence, nor that the meeting which he believed was a grievance hearing, regarding his own complaints and concerns, was actually a disciplinary hearing. One way to describe this lack of notice regarding a disciplinary action against him would be a lack of procedural due process. Another way would be to call it an ambush.  Either way, Plaintiff was given no opportunity to adequately defend himself.

      3.35    Burrus led the meeting, ostensibly examining each of the five issues discussed in the Memo[6]. These five issues included the following: (1) Plaintiff creating a negative workplace environment and wasting college resources; (2) Plaintiff's anger/unprofessional behavior; (3) Plaintiff creating false theories and being difficult; (4) Plaintiff violating TVCC Board policy DH (LOCAL); and (5) Students' complaints of Plaintiff and Plaintiff's treatment of students and co-workers. The hearing discussing these issues lasted for about thirty minutes.

      3.36    Burrus made hostile and bullying statements during the meeting however, regarding Plaintiff's TPIA records requests and the concerns Plaintiff had raised regarding faculty underpayments.  For example,

> Burrus: "On the DH(LOCAL) policy if you. look on page three, it's talks about the code of conduct for individuals that work at TVCC. On page three, it says an employee shall not…on page four, utilize college district time property facilities or equipment for any purposes other than college district business.
> Whenever you are going and printing all your information, whenever you are going and soliciting input from other individuals about their schedules, you are not being productive for TVCC, you're utilizing that time and resources for your own use. Just by the by. do you have any idea how much time and effort that it takes for us to go through this and pull the paperwork and talk with our attorneys and listen to the complaints that we have in regards to you? We have spent hours and hours and hours, and these are resources that we can be spent, utilize, spent doing better outcomes, better things than to talk about your behavior.
>
> Harman: "On your records. that I pulled, actually were TVCC records."

---

[6] A true and correct copy of the December 8, 2022, "Memo of Counseling," is attached hereto as <u>Exhibit D</u> and incorporated herein by reference.

Burrus: "So whenever you go and you solicit information from other individuals, is that for TVCC's benefit or for your own?"

Harman: "I believe mine and TVCC's."

3.37    Two things are clear. First, that despite the list of supposed grounds for the "Memo of Counseling," the chief concern was that Plaintiff was seeking information which he was entitled by law to seek, which related to the affairs of a public institution, and which, for whatever reason, TVCC refused to comply with state law in providing. Second, that Plaintiff's intention was to improve, not tear down, TVCC. Indeed, in his requests for information about faculty pay, he uncovered underpayments to other faculty, who later received the unpaid amounts which they would not have realized they were owed if not for Plaintiff.

3.38    The Memo concludes,

It is essential that the issues set forth herein cease immediately, no additional issues or policy violations arise, and that the mandates/requirements indicated herein are strictly followed. Failure to do so will subject you to discipline up to and including non-renewal of [Plaintiff's] contract or termination of [Plaintiff's] employment.

In essence, the Memo presented at the meeting was the product of TVCC's Administrators compiling all documents they could find to justify non-renewal or termination of Plaintiff. Ironically, there were no documents attached to the Memo to support or substantiate the issues listed in the Memo. Furthermore, the conduct discussed in the Memo related to Plaintiff discussing his issues with TVCC faculty and administrators as it related to TVCC's policy concerning overload calculations and OER certifications—both topics which impacted his bargained-for salary at the college. Seemingly, the Memo was based on Plaintiff's valid complaints and/or concerns about his bargained-for wages, and legitimate public records requests to TVCC. The issuance of the Memo against Plaintiff was an attempt to silence and/or chill his efforts to find an answer to those concerns, or to any which might arise in the future. The Memo and the de facto

hearing were in direct retaliation for Plaintiff bringing up his complaints and/or concerns via petitioning TVCC through the grievance process provided by DGBA(LOCAL), his discussing his concerns with colleagues and supervisors, and for his making open records requests pursuant to the TPIA as a citizen of Texas.

3.39    TVCC's conduct as set forth herein breached TVCC Board Policy DGBA(LOCAL), which states that "[n]either the Board nor any College District employee shall unlawfully retaliate against an employee for bringing a concern or complaint." Here, Plaintiff brought a complaint about his overload pay, OER certification issues, and his open records requests to Burrus. Instead of TVCC listening to Plaintiff's complaints about the aforementioned topics, TVCC, through the Administrators, issued Plaintiff a Memo to compel him to stop complaining about these topics. As such, TVCC's issuance of the Memo and the de facto hearing are in direct violation of TVCC Board Policy DGBA(LOCAL).

### 7.    Plaintiff files a grievance against TVCC and certain TVCC employees for the surprise disciplinary hearing and for the issuance of the Memo that took place on December 8, 2022

3.40    On January 17, 2023, Plaintiff filed a formal grievance against TVCC, and against TVCC administrative employees Dotts, Burrus, Spizzirri, and Richardson, for knowingly violating his constitutional, civil, and professional rights, including his academic freedom and other rights under the First Amendment; and for violating multiple state laws and TVCC Board policies. Additionally, Plaintiff filed a grievance against Fritz for allegedly violating the TPIA. On February 9, 2023, Plaintiff submitted an addendum describing in greater detail the facts, law, and policies underlying his January 17, 2023, grievance.

3.41    On February 23, 2023, then-President of TVCC, Dr. Jerry King ("King"), dismissed Plaintiff's grievance in its entirety as he found no merit to it.[7] The basis for King's decision was that he found no violation of TVCC policy or applicable law—claiming that TVCC has the right to counsel its employees on matters related to job performance, professional behavior, and impacts on the effectiveness of a department and complaints from co-workers. King admitted to Plaintiff, however, that he had not read Plaintiff's entire grievance and addendum.

3.42    King's explanation for dismissing Plaintiff's grievance is solely pretextual, as the actual reason why Plaintiff was given the Memo was to silence and/or chill his conduct that is protected under the First Amendment, the TPIA, and TVCC Board Policy DGBA(LOCAL). Plaintiff's concerns about TVCC's overload calculations and OER certifications are topics that impacted his bargained-for salary at TVCC, affected the salaries and compensation of other faculty, and concerned the financial integrity of TVCC. Plaintiff had the right to raise questions as to whether he and other faculty were being fairly compensated by TVCC—an issue that would be of interest to the public as it is the public's tax dollars being used to fund TVCC operations. If TVCC faculty are not receiving the actual salary they bargained for, what are the excess funds being allocated towards? TVCC's allocation of taxpayer money is an issue of public concern to taxpayers in Henderson, Kaufman, Anderson, Van Zandt, Hunt, and Rains County, Texas, specifically, but also throughout Texas, to the extent TVCC receives state money.

3.43    Furthermore, Plaintiff received exceptional reviews from Placyk (his Department Chair) and his students during the 2022 Fall Semester. No formal student or employee complaints were filed against Plaintiff. There was no evidence supporting the Memo, as Dotts testified at the

---

[7] A true and correct copy of the February 23, 2023, Decision by Dr. King is attached hereto as Exhibit E and incorporated herein by reference.

board-level grievance hearing described below. In short, Plaintiff received a disciplinary Memo telling him his job was at risk, during the same semester he received stellar reviews from his department chair and his students. This threat could not logically have followed from the reasons set forth in the Memo. Behind the pretext of misconduct, the impetus for the Memo can be directly traced to Plaintiff's TPIA requests and related inquiries, which made him a gadfly in the eyes of the Administrators.

### 8.      Plaintiff appeals King's decision to TVCC Board of Trustees

3.44     On March 8, 2023, Plaintiff appealed King's decision – the dismissal of Plaintiff's grievance – to the TVCC Board of Trustees (the "Board"). During the meeting, one Board member asked Dotts if he could see the evidence Dotts had against Plaintiff. Dotts stated she had ***none***. Also, another Board member asked if the department chair whom Dotts referenced as being against Plaintiff was the same one who gave Plaintiff a stellar evaluation, and Dotts said *yes*. Although the Board deferred to King's decision to dismiss Plaintiff's grievance, the Board poked holes into the reasons as to why Plaintiff received the Memo and the de facto disciplinary hearing. Furthermore, the Board expressed concerns to King about Plaintiff's pay for the 2022 Spring semester. The Board was thus aware that TVCC had no legitimate defense to Plaintiff's grievance but ratified its dismissal any way.

3.45     The only follow-up action taken by TVCC to address the issues Plaintiff raised was that King discussed with Plaintiff his pay for Spring of 2022; however, the payment issue went unresolved as King deferred to Richardson and Spizzirri — the administrators who had determined there was no issue with their overload calculation for that semester, and that Plaintiff was paid correctly. The Administrators were thus free to continue their retaliatory conduct against Plaintiff.

### 9.      Plaintiff is underpaid for a 2023 Fall class

3.46      In January of 2024, Plaintiff discovered that he was underpaid for a 2023 Fall class in the amount of $925.00. Plaintiff contacted Michelle Wright ("Wright"), an HR Generalist at TVCC, and she confirmed that Plaintiff was correct. She stated that the $925.00 would be added to the subsequent pay period. Plaintiff requested that Wright investigate this matter so it would not happen again to anyone else. Unfortunately, Plaintiff never received an answer as to why he was underpaid for his 2023 Summer and Fall classes.

### 10.      TVCC interferes with Plaintiff's grading

3.47      In April of 2024, Plaintiff caught one of his students cheating on an exam and, per his syllabus policy, gave the student a failing grade for the course. As part of Plaintiff's stated policy, students who were caught cheating on exams were not allowed to withdraw from Plaintiff's class, and instead the student would fail the class. Subsequently, the student appealed her grade to TVCC and TVCC allowed the student to withdraw from Plaintiff's class — in direct conflict with Plaintiff's policy for his students. As a result, Plaintiff filed a grievance against TVCC for violating his academic freedom by preventing him from issuing the student a failing grade per his syllabus policy. Plaintiff's prior grievance had also complained about TVCC's violations of his First Amendment rights, including academic freedom. Plaintiff submitted his new grievance on May 3, 2024.

3.48      On May 9, 2024, Dan Hopkins ("Hopkins"), Vice President of Administrative Services, dismissed Plaintiff's grievance to the Board of Trustees in its entirety. Hopkins' rationale for the dismissal was that Plaintiff's grievance was untimely and because Plaintiff did not have documentation attached to the grievance to support his allegations that were listed.

### 11.     TVCC non-renews Plaintiff, just eight business days after he filed his May 3, 2024, grievance, depriving him of his summer pay

3.49     On May 15, 2024, TVCC non-renewed Plaintiff, allowing his contract to expire on its own terms on May 31, 2024. At the same time, TVCC suspended Plaintiff with pay through the end of his contract term, and relieved him of all his job duties, and barred him from campus. TVCC also stripped him of the summer classes he had been assigned, which were already filling with students. Plaintiff appealed the decision to the Board, and the Board, after hearing Plaintiff's evidence and the argument of his counsel, accepted TVCC President Dr. Jason Morrison's decision to non-renew Plaintiff.

3.50     The Board, moreover, had heard Plaintiff's grievance the year before and knew that the Administrators' previous disciplinary action against Plaintiff had been without evidence and inconsistent with Plaintiff's performance reviews. At the appeal hearing before the Board in 2024, challenging his non-renewal, Plaintiff and his counsel explained that Plaintiff had exercised his rights under the First Amendment and the TPIA, and that his nonrenewal was in retaliation against him for such protected activity. Thus, the Board knowingly upheld the retaliatory nonrenewal of Plaintiff, and the Board's final decision, as TVCC's policymaker, was to ratify the retaliation.

3.51     In addition to the $15,000 which he would have earned in the summer of 2024, Plaintiff was underpaid approximately $30,000.00 between 2021 and when he was non-renewed, based on courses for which he should have received overload pay, or for which TVCC paid him less than he was entitled to under the applicable policies and programs. These underpayments breached his employment contracts with TVCC.

### 12.     TVCC prohibits Plaintiff from stepping foot on TVCC property

3.52     The same day Plaintiff was issued his non-renewal from TVCC, TVCC also issued a letter from its police department, advising Plaintiff that his presence on any property of TVCC

was prohibited. A true and correct copy of such letter is attached hereto as <u>Exhibit F</u> and incorporated herein by reference. The letter warned him that if he remains or returns to the property of TVCC without the consent of the TVCC police chief or the chief's designee, Plaintiff may be arrested and charged with criminal trespass. Thus, Plaintiff must get authorization from the TVCC police chief to gain access to TVCC property. This warning to Plaintiff lasts two years and is set to expire on May 15, 2026.

3.53    The prohibition has prevented Plaintiff from utilizing TVCC's recreational facilities. Prior to the prohibition, Plaintiff would attend TVCC sporting events and frequent the Farmer's Market and the local park (which is the closest park to his home) that is on TVCC property. Now, due to the prohibition, Plaintiff is prevented from engaging in those activities; activities that have no bearing on his professional life with TVCC and its administrators. Ultimately, this prohibition is unreasonable and unfair in scope, severely restricting Plaintiff's movement as to what he can do in his personal life.

3.54    TVCC did not give Plaintiff notice nor any opportunity to be heard in prohibiting him from being on TVCC property. Currently, Plaintiff still has not been given any opportunity to contest this prohibition or to limit the scope of the prohibition.  No criminal trespass notices were issued to Spizzirri or Townsend when they were pushed out.

## IV.  <u>CAUSES OF ACTION</u>

4.1    ***Alternative Pleadings***.  To the extent necessary, each of the claims set forth below is pleaded in the alternative, and all allegations contained in each count below are incorporated into each other count by this reference. Further, to the extent necessary, all allegations set forth above in Section III. <u>Factual Background</u> (paragraphs 3.1 through 3.54) of this Complaint are

hereby referenced and fully incorporated in each of the claims below by this specific reference, as though set forth in full.

**Count 1:**   **Violation of Fourteenth Amendment Brought Pursuant to 42 U.S.C. § 1983 – Deprivation of Property Interest without Procedural Due Process**

4.2    The violations of federal statutes and the United States Constitution complained of herein were done by state actors—TVCC, its Board, and its administration. The Board is the final policymaker relating to faculty employment. *See* Tex. Educ. Code § 130.082. The Board adopts policies, enacts regulations, and establishes general rules necessary for the operation of its campuses. *Id.* at § 130.040.

4.3    All actions and decisions complained of herein were made by policymakers of the institution, acting under color of law. In the alternative, the actions complained of herein were by persons to whom the Board had delegated final decision-making and policy-making power.

4.4    Plaintiff's classes for Summer 2024 had already been assigned to him, and were cancelled without notice or due process, depriving him of his property interest in his income from teaching such classes. He was also denied full payment for overload classes between 2021 and 2024, totaling approximately $45,000.  Such payment was withheld from him without procedural due process or an opportunity to contest such decisions. Plaintiff seeks as his damages all amounts withheld from him without due process, as well as nominal damages for the deprivation of due process.

4.5    In addition, Plaintiff was denied his rights under the TPIA. For purposes of the Fourteenth Amendment, property interests include rights conferred by state law, in this case the TPIA. As set forth above, TVCC repeatedly violated TPIA provisions in failing to provide information requested by Plaintiff, delaying providing information, failing to communicate requests for clarification, or providing a date and time by which Plaintiff would receive the

requested documents. These failures amount to non-compliance with Sections 552.221 and 555.301 of the TPIA, and deprivation of Plaintiff's rights under such statute. Of more serious constitutional concern is TVCC's refusal to recognize its obligations to Plaintiff under Section 552.223: "[t]he officer for public information or the officer's agent shall treat all requests for information uniformly without regard to the position or occupation of the requestor, the person on whose behalf the request is made, or the status of the individual as a member of the media." Tex. Gov't Code §552.223.

4.6     TVCC specifically treated Plaintiff's requests for information as wasting time and resources of the college, rather than as requests under state law to be complied with. This violation of the statutory scheme deprived Plaintiff of his property interest in the rights provided by the TPIA, with no procedural due process. Plaintiff ultimately lost his job as a result of this violation of his rights, and seeks all damages related to his non-renewal, as well as reinstatement, and nominal damages for the denial of due process.

**Count 2:      Violation of the First Amendment Brought Pursuant to 42 U.S.C. § 1983 – Denial of Freedom of Speech and Academic Freedom**

4.7     Plaintiff's expressions of concern and inquiries into how TVCC administrators calculate overload pay for TVCC faculty, the administrators' lack of transparency concerning OER certification, and TVCC's lack of compliance with the TPIA were protected by the First Amendment. Plaintiff spoke as a citizen on these matters, as he addressed these issues to the Board and TVCC administration. Furthermore, he employed his rights as a Texas citizen to make public records requests pursuant to the TPIA—seeking documents related to how TVCC calculates overload pay and makes OER designations. Plaintiff's employment at TVCC has no bearing on his right to receive the requested information in a timely manner. Under the Act, "[t]he officer for public information or the officer's agent shall treat all requests for information uniformly without

regard to the position or occupation of the requestor, the person on whose behalf the request is made, or the status of the individual as a member of the media." Tex. Gov't Code §552.223. Furthermore, Plaintiff's inquiries into these matters were as a citizen, and not within the scope of his duties as a professor of Biology teaching Anatomy and Physiology.

4.8      The content, form, and context of Plaintiff's speech indicate that his speech, in petitioning TVCC through multiple grievances, discussing concerns verbally with administrators and faculty colleagues, and in making TPIA requests, related at all times to matters of public concern. Plaintiff's conduct—inquiring as to how TVCC calculates its overload pay for faculty, how it makes its OER designation decisions, and grieving over alleged violations of faculty academic freedom and other rights—centered on ensuring TVCC faculty are paid reasonably and fairly for what they bargained for in their employment contracts and that their Constitutional right to academic freedom and other rights are protected. The content of Plaintiff's speech—verifying that TVCC pays its faculty fairly and reasonably for what they bargained for in their employment contracts and ensuring that TVCC protects the academic freedom and other rights of its faculty— involved matters of public concern; taxpayers in Henderson and surrounding counties and in the state of Texas would be interested in what their taxpayer money is going toward if TVCC is allegedly underpaying its faculty. It would be of interest to the community of Henderson County and the other counties supporting TVCC as to how exactly their taxpayer money is allocated to fund the operations of TVCC. It would also be of interest to those taxpayers as to whether faculty free speech, including academic freedom, was being upheld and protected by TVCC in compliance with the institution's own policies and state and federal law.

4.9      The form of Plaintiff's speech was through public records requests made under the TPIA, exercising his rights as a citizen, and follow-up communications with TVCC's PIO;

discussions with TVCC faculty and administrators; and through formal grievance proceedings with TVCC faculty, administrators, and the Board. As to the context, Plaintiff's speech occurred because TVCC did not pay him his full 2022 Spring and Summer overload compensation as he had bargained for with TVCC, in addition to his other grievances surrounding OER course designations and alleged violation by TVCC of his academic freedom and other rights. After Plaintiff discussed the issue of overload underpayment with Placyk and other TVCC faculty, he learned that this was not the first time that TVCC had short-changed its faculty. On his own behalf and for the benefit of other public employees, Plaintiff took on the role of watchdog over how TVCC pays its faculty, attempting to ensure TVCC, as a public employer, pays its faculty for what they had bargained for and were entitled to receive.

4.10    Plaintiff's conduct of discussing these matters with faculty and administrators and seeking the open records requests did not negatively impact the efficiency of TVCC. Instead, Plaintiff received a sterling evaluation from his department chair Placyk and from the students he taught during the 2022 Fall semester. No formal complaints and/or grievances were filed against Plaintiff alleging his conduct was negatively impacting the efficiency of TVCC. Furthermore, Plaintiff's conduct—inquiring as to how TVCC calculates its overload pay for faculty, how TVCC makes its OER designations, and submitting open records requests — caused TVCC Administrators to issue Plaintiff a disciplinary Memo. As described in Section III, the Memo, and the meeting at which it was presented to Plaintiff, was retaliation against Plaintiff for exercising his rights under the First Amendment and served to chill conduct that is protected under the First Amendment and TVCC Board Policy DGBA(LOCAL).

4.11    The Memo gave Plaintiff strict guidelines to follow, and if he did not follow them, he would be at risk of non-renewal or termination of his employment. Roughly a year and a half

after Plaintiff was issued the Memo, TVCC non-renewed his contract because Plaintiff was not in strict compliance with the Memo. During the hearing over Plaintiff's non-renewal, the college attempted to claim other rationale for his non-renewal, including that his drop/fail/withdraw numbers were too high and that he was rude to students. When those arguments failed on the merits, the college resorted to claiming his non-renewal was due to his violation of the Memo. As such, Plaintiff suffered an adverse employment event in not having his contract renewed, and his protected conduct under the First Amendment is what motivated TVCC to non-renew him.

4.12    Furthermore, TVCC's administrators interfered with Plaintiff's academic freedom, a "special concern" of the First Amendment's guarantee of freedom of speech, by preventing Plaintiff from issuing a grade of "F" to his cheating student, per his syllabus policy, and instead permitting the student to withdraw from the course with a grade of "W." TVCC's modification of the student's final grade in Plaintiff's class was directly against Plaintiff's policy listed in his syllabus. Plaintiff's policy states that if a student is caught cheating, then the student receives a failing grade in Plaintiff's class and is not allowed to withdraw from the class. The purpose of Plaintiff's policy is to hold students accountable for their actions because students in Biology and Anatomy and Physiology normally pursue careers in the medical field where great responsibility and accountability are required. For many years, Placyk, Plaintiff's department chair, and other TVCC administrators had reviewed and approved Plaintiff's syllabus—with the policy listed. With the grade modification, they knowingly interfered with and violated Plaintiff's right to learn, explore, and challenge ideas with his students. Specifically, TVCC interfered with Plaintiff's methodology and lesson of holding his students accountable for their actions.

4.13    TVCC's policymakers, including its Board and the administrators to which the Board delegated policymaking regarding faculty matters and open records requests, were the

driving force behind the retaliatory attacks on Plaintiff. The retaliation against him for exercising his rights under the First Amendment has proximately caused damage to Plaintiff, as he was ultimately denied renewal of his contract and the loss of his teaching position.

**Count 3:     Violation of the Fourth and Fourteenth Amendment Brought Pursuant to 42 U.S.C. § 1983 – Restraint on an Individual's Freedom of Movement.**

4.14     The violations of federal statutes and the United States Constitution complained of herein were done by state actors—TVCC, its Board, and its administration. All actions and decisions complained of herein were made by policymakers of the institution, acting under color of law.

4.15     Plaintiff is prohibited from stepping foot on TVCC property due to the criminal trespass warning that was sent to him on May 16, 2024, by TVCC's police department. In considering the circumstances, TVCC's police department's conduct would have communicated to a reasonable person, such as the Plaintiff, that the person was not free to decline the police department's request to stay off TVCC property. As a result, Plaintiff's freedom of movement has been severely restricted, with no due process.

4.16     Plaintiff lives about a mile away from the TVCC campus. Prior to the criminal trespass warning, Plaintiff enjoyed utilizing TVCC's recreational facilities. Specifically, he would attend countless TVCC sporting events and frequent the Farmer's Market that would take place on TVCC property. Now, with the criminal trespass warning, Plaintiff cannot perform any of these activities without seeking the permission of TVCC's police chief or the police chief's designee. The scope of the criminal trespass warning is unfair and unreasonable because it has prevented Plaintiff from engaging in activities he enjoys in his personal life. Furthermore, there have been no complaints—formal or informal—from TVCC's administration to warrant a criminal trespass warning against Plaintiff. Plaintiff's non-renewal from TVCC does not warrant a criminal trespass

warning to restrict what he can do outside of his professional relationship with TVCC. The criminal trespass warning is extreme, and as a result, has significantly restricted the movement of Plaintiff—equating to an illegal seizure of Plaintiff. This has caused damages to Plaintiff, for which he here sues.

**Count 4:      State Law Claim for Breach of Contract**

4.17    TVCC Board Policy DH(LOCAL) states that "[a]n employee shall . . . [f]ollow and comply with all College District policies, regulations, or rules." Both TVCC and Plaintiff were expected to comply with those policies. Because TVCC required Plaintiff to comply with its policies, the policies of TVCC became part of Plaintiff's contract under Texas law.

4.18    Plaintiff was under a one-year term contract with TVCC when he reported his concerns about overload pay, OER certification, and violation of his academic freedom, to TVCC's administration. TVCC Board Policy DGBA(LOCAL) states "[n]either the Board nor any College District employee shall unlawfully retaliate against an employee for bringing a concern or complaint." Without formally hearing Plaintiff's grievance, TVCC issued a Memo to compel Plaintiff to stop complaining about some or all of these topics, and eventually, non-renewed Plaintiff for his conduct in raising these concerns. Thus, the Memo and TVCC's subsequent non-renewal were retaliation for Plaintiff's complaints and grievances against TVCC. As such, TVCC's issuance of the Memo and non-renewal of Plaintiff are in direct violation of TVCC Board Policy DGBA(LOCAL). TVCC's breach of its contract with Plaintiff has caused damage to Plaintiff in the form of the loss of his income and benefits as an employee of TVCC, including his salary for the 2024-2025 year, and benefits, stipends, or overload pay he would have earned, and his summer pay for 2024.

4.19.   In addition, TVCC underpaid Plaintiff during 2021-2024 by an estimated $30,000.00, in breach of the policies and other contract terms governing the calculation of his pay during that time period.

## V.  <u>REQUESTED RELIEF</u>

5.1    As the direct and/or proximate result of TVCC's actions complained of herein, Plaintiff has been damaged and seeks recovery of the full measure of relief and damages against TVCC, including but not limited to actual and/or economic damages, nominal damages, if applicable, compensatory damages in an amount within the jurisdictional limits of this Court, and all equitable relief, including reinstatement, to which he may be entitled.

## VI.  <u>FEES, COSTS, AND INTEREST</u>

6.1    Plaintiff has retained the law firm of Hill Gilstrap, P.C. to represent him in connection with this matter, and has agreed to pay the law firm its reasonable and necessary attorney's fees and costs in connection with such representation. Without waiving and/or limiting any other relief requested, Plaintiff seeks to recover his reasonable and necessary attorneys' fees and costs incurred and to be incurred in bringing this suit and in all appeals of this suit, as permitted by law or in equity, specifically including 42 U.S.C. § 1988, applicable to Plaintiff's constitutional claims, and TEX. CIV. PRAC. & REM. CODE § 38.001 *et seq.*, applicable to Plaintiff's breach of contract claim.

6.2    Plaintiff is also entitled to and seeks to recover costs of court, expert witness fees, along with pre-judgment and post-judgment interest at the maximum rate permitted by law.

## VII.  <u>CONDITIONS PRECEDENT</u>

7.1    All conditions precedent to the Plaintiff's recovery on the claims alleged herein have been performed or have occurred.

## VIII.  **DEMAND FOR JURY TRIAL**

8.1     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests a

jury trial and has tendered, or will tender, the requisite fee.

### **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that upon final

hearing, Plaintiff recovers judgment against Defendant and be awarded:

(a)     any and all amounts recoverable and/or recognizable as damages under law and/or in equity, resulting and/or occasioned by the wrongful acts and/or conduct of Defendant (as set forth above more specifically), including both actual and nominal damages;

(b)     his litigation expenses and costs, including but not limited to his attorneys' fees and costs and any applicable expert fees;

(c)     costs of court, pre-judgment and post-judgment interest, at the maximum rate as allowed by law; and

(d)     such other and further relief, both general and special, at law or in equity, to which he may be justly entitled.

Respectfully submitted,

*/s/ Frank Hill*
Frank Hill – SBN 09632000
fhill@hillgilstrap.com
Stefanie Klein – SBN 11565650
sklein@hillgilstrap.com
HILL GILSTRAP, P.C.
1400 W. Abram St.
Arlington, Texas 76013
(817) 261-2222
(817) 861-4685 FAX

**ATTORNEYS FOR PLAINTIFF**

# Exhibit A

| | |
|---|---|
| **From:** | Spizzirri, Kristin |
| **To:** | Burrus, Roddy |
| **Cc:** | Dotts, Janene |
| **Subject:** | RE: Harman |
| **Date:** | Wednesday, September 21, 2022 10:51:04 AM |
| **Attachments:** | image002.png |

Thank you Rod.  As I had said this morning, Erica and I are meeting in the morning to pull together the information Harman has requested.  We will send this electronically to Janene (and you?)

Kristin

Your ability to lead will never be greater than your capacity to serve.

*Kristin Spizzirri, EdD*
Vice President of Instruction
& Chief Academic Officer
Trinity Valley Community College
903-675-6231
kspizzirri@tvcc.edu

**From:** Burrus, Roddy <roddy.burrus@tvcc.edu>
**Sent:** Wednesday, September 21, 2022 10:42 AM
**To:** Spizzirri, Kristin <kspizzirri@tvcc.edu>
**Cc:** Dotts, Janene <janene.dotts@tvcc.edu>
**Subject:** Harman

So, it was hot and we had other activities going on at the time.  As I mentioned, Janene had talked to Melinda Berry and she said that not only could she take referrals for students but also for faculty and staff.

I can tell you that in a previous conversation, John Playck said and I quote, "*I need to talk to Thomas Booth to see if Michael has access to any guns.*"  Erica Richardson said in the same conversation, and I am paraphrasing here, "*Sometimes when I leave late at night it makes me nervous, he could be waiting for me.*"  Anyway, Janene and I did speak to legal counsel and she did not seem to think that we had anything actionable at this time.  I told Janene, at least it is documented that we spoke to Leigh so we are being proactive.

My thoughts, Michael made a big stink about his class and other allegations and I completed an investigation and thought that I put it to rest.  However; this is his second attempt to try to 'topple' Administration.  I believe that we should comply with his request to access information, then let him know that we have been complicit in his harassment long enough, that we are not going to allow ourselves to enable his conspiracy theories and that his manner towards students, faculty and staff have digressed to the point that Administration must explore other options.

I believe that questions lead to a heightened sense of accountability because we know someone is

**EXHIBIT A**

watching and keeping us on the straight and narrow, however; when the needs of the one outweigh the needs of the many (students, faculty & staff) then a change needs to be made.

There again, my thoughts…….

I can tell you that Janene asked for me to get e-mails, statements or other documentation from Holley Collier, John Placyk, Erica Richardson, yourself and anyone else that might have access, to show a patterns of passive aggressive to antagonistic behavior.

Rod Burrus
**Assistant Director of Human Resources**
903-670-2649
rod.burrus@tvcc.edu



**EXHIBIT A**

# Exhibit B

## Harman, Michael

| | |
|---|---|
| **From:** | Placyk, John |
| **Sent:** | Sunday, June 5, 2022 1:53 PM |
| **To:** | Burrus, Roddy |
| **Subject:** | Harman |

Hello Rod,

We've yet to meet, but I know you'll be part of our Biology faculty search interviews on Tuesday, so I look forward to talking to you there.

I've been at TVCC since the Spring of 2020 and was promoted to Science Division Chair in the Spring of 2021. I came from UT-Tyler after spending 12 years there. At UT-Tyler, I was a tenured professor of Biology, Faculty Senator, Acting Biology Department Chair, Assistant Department Chair, Graduate Program Coordinator, Chair of the Student Appeals Committee and a member/chair of many other department, college, and university committees. I left due to an extremely toxic work environment to join TVCC. So, I am no spring chicken in the world of academia at both the faculty and administrative levels. I know healthy and unhealthy work environments and while my faculty and fellow chairs are great, we have some serious problems with the leadership of Instruction and Academics. I'm also originally from the Philly/South Jersey area, so I freely speak my mind and will tell you how it is. 😊

 I'm writing today in support of Michael Harman's claims 1) regarding his behavior at a recent OER information meeting and 2) in regarding being underpaid for the Spring 2022 semester.

1) Prior to the Summer 2022 semester, we (the faculty) were told that since Holley Collier would not be able to certify most or all summer classes to be OER that anyone teaching a course they considered to be OER that their courses would be listed as such on the summer schedule. This held true for everyone in that situation other than Michael Harman and when he and I asked for this to be remedied, he was told by Kristin Spizzirri that it was a mistake to have the others courses listed as OER and that those designations had been pulled. That never happened. Instead only Michael's courses remained without the OER designation until some time in the last week or so when it was added back to his courses with indication of why they had changed their minds. When asked why it was pulled off of his course originally, Spizzirri and Erica Richardson told Michael that they were pulling it from everyone's course that wasn't certified and that their chairs were informed of this and told to relay that information to their faculty. No such directive ever existed. In fact, after I send this e-mail, I will send you an e-mail I sent to Erica and Holley regarding this and I can tell you that the e-mail I sent went unanswered. At the OER meeting, Michael was understandably frustrated and direct, but I do not believe he was inappropriate in wanting straight answers.

2) Regarding his overload from the Spring of 2022. First, ever since I became Chair, I was never asked to share overload calculations with my faculty; that was always left to Erica Richardson. So, when they said that I did not share those with Michael, it's because I was never told to share those in the 3 semesters had been chair at that point. Second, I am always asked to ask faculty about a week or two before the semester starts if they will teach low enrollment courses by head, but since Michael did not have any low enrollment courses at the time, he was not asked this question. Third, when they (Erica and Kristin) decided to not pay him a full overload for his course, the semester was already 3-4 days in. They then told me and the other chairs following Michael's complaints that we need to calculate overloads on the first Thursday of the semester (4

1

**EXHIBIT B**

days after the semester starts!) and that we should all know that.  Note that no other chair including myself had ever heard of such a policy and it simply makes no sense to make such a decision that many days into the semester.  In the end, I was, again, blamed for this situation when I did everything I was told to do.  If I had my say, I'd have paid him in full for that overload.  I will also send e-mail correspondence in relation to this situation.

The most important thing about being a leader is having the trust of your subordinates.  ...and being thrown under the bus by Erica and Spizzirri several times now does not build that trust.  They need to take responsibility for their actions and not blame others for their mistakes and why Michael has to be a target of their bad policies makes no sense to me other then that he calls them out on their mistakes and they simply don't like him, but that's just my opinion.

 I'm willing to talk to you in person about all of this on Tuesday between interviews if you'd like.  Given the possibility for retaliation against me for speaking out, I'd like for this information to be held confidential/anonymous at the moment.

Some e-mails to head your way in a minute or two.

-John

John S. Placyk, Jr, Ph.D., Chair and Professor
Science Division
Trinity Valley Community College

903-675-6382 - Office
903-603-5897 - Cell

john.placyk@tvcc.edu

2

**EXHIBIT B**

# Exhibit C

FACULTY EVALUATION BY IMMEDIATE SUPERVISOR, DEAN,
**PROVOST, OR ASSOCIATE V.P.**

| NAME:  Michael Harman | 10/3/2022 |
|---|---|

Rate the following items from 0 to 3 using the following scale:

- *3 – Meets Expectations (100 % compliance);*
- *2 – Not Applicable;*
- *1 – Needs Improvement (< 100% compliance);*
- *0 –Out of compliance/**PIP needed** (< 75% compliance)*

| | **FACULTY SELF EVALUATION AND SUPERVISOR RATING** | **Faculty Self-Rating** | **Supervisor Rating** |
|---|---|---|---|
| a) | **Instructor cooperates with other TVCC personnel including immediate supervisor, administration, other faculty members, and support staff.** | 3 | 3 |
| b) | Instructor notifies the division chairperson, their immediate supervisor, or appropriate administrator via email and telephone message as early as possible of an inability to meet a class. | 3 | 3 |
| c) | Instructor participates in curriculum development, including, but not limited to: <br> • Syllabus review and update <br> • Learning outcome identification, evaluation, and reporting <br> • Program reviews <br> • Library book/resources recommendations <br> • Instructional material and textbook review and recommendation | 3 | 3 |
| d) | Instructor willingly accepts his/her share of department/division tasks, including, but not limited to: <br> • Counseling and registration of students <br> • Informing administration of all matters that affect the welfare of students, faculty, or the institution <br> • Serving as member of committees (list committees actively serving) <br> • Performing other duties as assigned by immediate supervisor, associate vice president, dean, provost, vice president of instruction, or president | 3 | 3 |
| e) | **Instructor is present and punctual in attending meetings and assigned events,** including, but not limited to: <br> • Scheduled faculty meetings <br> • Learning Day <br> • Commencement <br> • Committee meetings <br> • Special meetings called by immediate supervisor, associate vice president, dean, provost, vice president of instruction, or president | 3 | 3 |

**EXHIBIT C**

PRECEPT EVALUATION BY IMMEDIATE SUPERVISOR, DEAN,
**PROVOST, OR ASSOCIATE V.P.**

| | | | |
|---|---|---|---|
| f) | Instructor completes assigned non-instructional record-keeping tasks properly and in a timely manner, including, but not limited to:<br><br>• Posting updated/current syllabi to TVCC website<br>• Verifying and authorizing special assignment agreements, when applicable<br>• Selecting textbooks in Cardinal Connection<br>• Certifying class rolls for each assigned course in Cardinal Connection<br>• Verifying and confirming future schedules, including room assignments, course offerings and class times<br>• Posting semester grades in Cardinal Connection<br>• Other requested and assigned activities | 3 | 3 |
| g) | Instructor teaches assigned classes according to approved course syllabi and minimum competencies. | 3 | 3 |
| h) | Instructor maintains office hours in accordance with TVCC Board Policy DJ (LOCAL). Part-time faculty are available to students outside of their regularly scheduled classes for consultation/assistance with class-related items on an as needed-basis. | 3 | 3 |
| i) | Instructor publishes office hours in their syllabus and posts on their office door (if applicable) to meet the requirements outlined in TVCC Board Policy DJ (LOCAL). | 3 | 3 |
| j) | Instructor participates in the identification and evaluation of student learning outcomes (LEAPs). | | |
| k) | Instructor keeps accurate and current student records, including, but not limited to:<br>• Attendance<br>• Class grade records<br>• Exam answer keys<br>• Lesson assignments<br>• Student artifacts for outcome assessment<br>• Evidence of improvement plans related to student learning assessment<br>• Materials and equipment available for substitute instructors | 3 | 3 |
| l) | Instructor attends professional development opportunities as assigned and is proactive with maintaining professional development hours relevant to their instructional assignment. | 3 | 3 |
| m) | Instructor has completed the mandatory training assigned to them by the Human Resource Office, the Information Technology Department, or their supervisor(s) for compliance of State and Federal requirements. | 3 | 3 |

**EXHIBIT C**

FACULTY EVALUATION BY IMMEDIATE SUPERVISOR, DEAN,
PROVOST, OR ASSOCIATE V.P.

## FACULTY EVALUATION COMPONENTS

| TO BE COMPLETED BY FACULTY AND/OR SUPERVISOR *(See Instructions Below)* | Overall Assessment (check one) | | | Comments |
|---|---|---|---|---|
| QUESTIONS FROM THE COURSE EVALUATIONS: | Exceeds Expecta- tions | Meets Expecta- tions | Improve- ment Needed | |
| n) The instructor relates the importance of the subject matter to real life. | 4.51 | | | |
| o) The instructor is very knowledgeable of the subject matter. | 4.75 | | | |
| p) The instructor encourages questions and discussions from students. | 4.18 | | | |
| q) The instructor follows the provided syllabus for classroom instruction and assignments. | 4.47 | | | |
| r) The instructor gives class assignments (tests, projects, presentations, etc.) that measure what was covered. | 4.39 | | | |
| s) The instructor's teaching methods are effective in helping me learn. | | 3.95 | | I calculated a 3.87, but I think I'm missing some evals |
| t) The instructor expects students to take responsibility for their learning. | 4.68 | | | |
| u) The instructor establishes a climate of respect. | 4.37 | | | |
| v) The instructor is well organized and prepared for each class. | 4.45 | | | |
| w) The instructor is available to me on matters pertaining to the class. | 4.40 | | | |
| x) The instructor provides feedback or grades for all assignments, quizzes, or exams within one week. | | 3.49 | | I calculated a 4.69 for this one. |
| y) The instructor meets and starts class on time, do not answer the question if class was online. | 4.62 | | | |
| z) This instructor has challenged me to think. | 4.30 | | | |

*The "Overall Assessment" box should be filled out based upon the overarching pattern that emerges from the student course evaluation results. Judgments about an instructor's need to improve or his/her strength in an area should be based upon a review of the student evaluations submitted for the courses they are teaching. Below is a suggested guideline for judging performance; however, faculty and division chairs are encouraged to use their professional judgment for unique situations. In circumstances where limited participation of student evaluation an issue, the faculty member is encouraged to provide strategies for improving participation rates in their faculty comment section.:*

> *Exceeds Expectations is assigned to questions for which the average for the instructor is rated a 4.0 score or above;*
> *Meets Expectations is assigned to questions for which the average falls between 3.0 and 3.9;*
> *Improvement Needed is assigned to questions for which the average falls below 3.0.*

**EXHIBIT C**

**PROVOST, OR ASSOCIATE V.P.**

## FACULTY IMPROVEMENT SECTION

Professional development activity that you've engaged in since the last evaluation.

| Date(s): | Title: | Description: | Total Hours Overall | Hours Related to Distance Education |
|----------|--------|--------------|---------------------|-------------------------------------|
|  | Learning Day |  | 5 | 1 |
|  | Learning Day |  | 5 | 1 |
| 5/12 | OER Meeting |  | 2 | 1 |
|  |  |  |  |  |

From last year's evaluation, review the goals and objectives for improvement and indicate whether these were accomplished. Why, or why not?

**Faculty Comments:** I have completed the new note packets that utilized the published version of OpenStax A & P textbook. I have updated lab lists and created Ultimate Lab Practicals for BIOL 2401 & 2402. I am currently working on extra pics for lecture and lab. I have nearly completed recertification for my OER sections of BIOL 2401 & 2402. My classes are ADA compliant as note packets are in Ariel font and alt text have been included for most lab pics.

**Supervisor Comments:**

Great job updating and modernizing your classes. Always happy to see dynamic course development over static complacency any day.

Goals and objectives for improvement for the upcoming year.

**Faculty Comments:** Finish updating lab and lecture pics, re-record lectures, and Ultimate Exams for BIOL 2401 & 2402. Add more exams to my Testbank for BIOL 2402.

**Supervisor Comments:**

The biggest concern from your student evals was teaching effectiveness, so if achieving these goals will help with that, have at it. Otherwise, I'd suggest also focusing on that chink in the armor in 22-23.

Please use this space below for any additional comments.

**Faculty Comments:**

**Supervisor Comments:**

Communication with me is always good and due dates are always met. Student evals are overall great with only teaching effectiveness needing attention for 22-23. Keep up the good work!

| _John S. Placyk, Jr._   10/24/22 | _[signature]_   10/24/22 |
|---|---|
| Signature of Supervisor   Date | Signature of Instructor   Date |

Please attach copies of your *Student Evaluations of Course and Instructor*
Immediate Supervisor **MUST** keep a copy of these results on file.

**EXHIBIT C**

Division Name: Science
Instructor Name: M. Harman

john.placyk
mharman

Course: BIOL-2402          Section: ATH06
Campus: ATHE               Type of Course: Face to Face

| Counts<br>Responses | Total | Descriptive Statistics<br>Mean |
|---|---|---|
| 1. The instructor relates the importance of the subject matter to real life. | 8 | 4.75 |
| 2. The instructor is very knowledgeable of the subject matter. | 8 | 4.75 |
| 3. The instructor encourages questions and discussions from students. | 8 | 4.75 |
| 4. The instructor follows the provided syllabus for classroom instruction and assignments. | 8 | 4.5 |
| 5. The instructor gives class assignments (tests, projects, presentations etc.) that measure what was covered. | 8 | 4.5 |
| 6. The instructor's teaching methods are effective in helping me learn. | 8 | 4.25 |
| 7. The instructor expects students to take responsibility for their learning. | 8 | 4.63 |
| 8. The instructor establishes a climate of respect. | 8 | 4.75 |
| 9. The instructor is well organized and prepared for each class. | 8 | 4.63 |
| 10. The instructor is available to me on matters pertaining to the class. | 8 | 4.63 |
| 11. Instructor provides feedback/grade for each assignment, quiz or exam within 1 or 2 weeks for major assignments. | 8 | 4.63 |
| 12. The instructor meets class and starts class on time, do not answer this question if class was online. | 8 | 4.63 |
| 13. This instructor has challenged me to think. | 8 | 4.63 |

*Mean scores (or the average score) is based upon student responses of 5-Strongly Agree, 4-Agree, 3-Neither Agree nor Disagree, 2-Disagree and 1-Strongly Disagree. If students responded with Not Applicable, their scores are not counted in the N, or in the Mean score--so they do not affect the average.*

*A score of zero indicates no responses were received. Zero does not mean a student scored you as a zero.*

**14. What could the instructor do to improve this class?**

Go slower.

Telling stories that matter to the lecture, not ones that goes on long tangents to where we have to continue lecture in lab

HE DONE A WONDERFUL JOB TEACHING THIS CLASS

Everything was GREAT! Keep doing what you are doing.

He does a great job at teaching. I don't think he needs improvement.

Maybe provide more material to study than just the notes/ a test guide

The class was perfect for me. I loved his teaching style.

67

**EXHIBIT C**

How he gives us the tools to be successful and pushes us to be the best

It was easy to follow

THE CHALLENGE

All of his stories that made you understand each subject matter better. I'm a better student in this subject now after taking his class.

His lectures. He allows students to have access to online lectures. So if you miss a class you don't miss out on learning.

How it relates to real life

the stories that you tell that go along with the lesson!

The teaching method was perfect for me. The class was tough but I was able to make it through successfully. I would recommend his class to anyone wanting and willing to learn and succeed.

68

**EXHIBIT C**

Division Name: Science

Instructor Name: M. Harman

john.placyk

mharman

Course: BIOL-2402

Campus: ATHE

Section: ATH07

Type of Course: Face to Face

| Counts Responses | Total | Descriptive Statistics Mean |
|---|---|---|
| 1. The instructor relates the importance of the subject matter to real life. | 2 | 4.5 |
| 2. The instructor is very knowledgeable of the subject matter. | 2 | 5 |
| 3. The instructor encourages questions and discussions from students. | 2 | 4.5 |
| 4. The instructor follows the provided syllabus for classroom instruction and assignments. | 2 | 4.5 |
| 5. The instructor gives class assignments (tests, projects, presentations etc.) that measure what was covered. | 2 | 4.5 |
| 6. The instructor's teaching methods are effective in helping me learn. | 2 | 4 |
| 7. The instructor expects students to take responsibility for their learning. | 2 | 5 |
| 8. The instructor establishes a climate of respect. | 2 | 4 |
| 9. The instructor is well organized and prepared for each class. | 2 | 5 |
| 10. The instructor is available to me on matters pertaining to the class. | 2 | 5 |
| 11. Instructor provides feedback/grade for each assignment, quiz or exam within 1 or 2 weeks for major assignments. | 2 | 5 |
| 12. The instructor meets class and starts class on time, do not answer this question if class was online. | 2 | 5 |
| 13. This instructor has challenged me to think. | 2 | 4.5 |

*Mean scores (or the average score) is based upon student responses of 5-Strongly Agree, 4-Agree, 3-Neither Agree nor Disagree, 2-Disagree and 1-Strongly Disagree. If students responded with Not Applicable, their scores are not counted in the N, or in the Mean score--so they do not affect the average.*

*A score of zero indicates no responses were received. Zero does not mean a student scored you as a zero.*

**14. What could the instructor do to improve this class?**

Make the lecture review exactly the same as the exam.

The class is structured very well.

**15. What do you like most about this class?**

The lab quizzes are exactly the same as the review.

This is my first face to face class. I learned much better this way.

69

**EXHIBIT C**

Division Name: Science

Instructor Name: M. Harman

john.placyk

mharman

Course: BIOL-2401                    Section: ATH12

Campus: ATHE                         Type of Course: Face to Face

| Counts<br>Responses | Total | Descriptive<br>Statistics<br>Mean |
|---|---|---|
| 1. The instructor relates the importance of the subject matter to real life. | 6 | 4.5 |
| 2. The instructor is very knowledgeable of the subject matter. | 6 | 4.67 |
| 3. The instructor encourages questions and discussions from students. | 6 | 4.17 |
| 4. The instructor follows the provided syllabus for classroom instruction and assignments. | 6 | 4.17 |
| 5. The instructor gives class assignments (tests, projects, presentations etc.) that measure what was covered. | 6 | 4 |
| 6. The instructor's teaching methods are effective in helping me learn. | 6 | 3.5 |
| 7. The instructor expects students to take responsibility for their learning. | 6 | 4.67 |
| 8. The instructor establishes a climate of respect. | 6 | 4.33 |
| 9. The instructor is well organized and prepared for each class. | 6 | 4.33 |
| 10. The instructor is available to me on matters pertaining to the class. | 6 | 4.5 |
| 11. Instructor provides feedback/grade for each assignment, quiz or exam within 1 or 2 weeks for major assignments. | 6 | 4.5 |
| 12. The instructor meets class and starts class on time, do not answer this question if class was online. | 6 | 4.17 |
| 13. This instructor has challenged me to think. | 6 | 4.67 |

*Mean scores (or the average score) is based upon student responses of 5-Strongly Agree, 4-Agree, 3-Neither Agree nor Disagree, 2-Disagree and 1-Strongly Disagree. If students responded with Not Applicable, their scores are not counted in the N, or in the Mean score--so they do not affect the average.*

*A score of zero indicates no responses were received. Zero does not mean a student scored you as a zero.*

**14. What could the instructor do to improve this class?**

Explaining things more, giving us more information for the test. What we are given is nothing like the practice test.

Make the exams more like the practice exam or be more transparent on what exactly will be on the tests.

Rearranging sometimes. The tests we take before actually going over it we go over the things we took on tests after completing the te...

Nothing really due to the complexity of the subject matter.

This was a very hard class but Mr. Harman helped me through this class even though I had medical issues this semester.

Hard to study for exams, he has practice tests for them but they don't translate to the test. Also could improve with helping students when they ask a question or address a concern, when this happens he doesn't really help or make me feel heard and important.

**15. What do you like most about this class?**

Your jokes.

Labs are very self explanatory, he makes class interesting.

What I like about the class is that Ive learned so many things that I didn't know about human anatomy.

How Harman relates the topics to stories, whether they be true or fiction and the interesting relations learned that I can apply to real life scenarios.

Nothing

**EXHIBIT C**

Division Name: Science

Instructor Name: M. Harman

john.placyk

mharman

Course: BIOL-2401          Section: ATH13

Campus: ATHE              Type of Course: Face to Face

| Counts<br>Responses | Total | Descriptive Statistics<br>Mean |
|---|---|---|
| 1. The instructor relates the importance of the subject matter to real life. | 5 | 4.60 |
| 2. The instructor is very knowledgeable of the subject matter. | 5 | 4.80 |
| 3. The instructor encourages questions and discussions from students. | 5 | 4.20 |
| 4. The instructor follows the provided syllabus for classroom instruction and assignments. | 5 | 4.80 |
| 5. The instructor gives class assignments (tests, projects, presentations etc.) that measure what was covered. | 5 | 4.40 |
| 6. The instructor's teaching methods are effective in helping me learn. | 5 | 3.60 |
| 7. The instructor expects students to take responsibility for their learning. | 5 | 4.80 |
| 8. The instructor establishes a climate of respect. | 5 | 4.60 |
| 9. The instructor is well organized and prepared for each class. | 5 | 4.60 |
| 10. The instructor is available to me on matters pertaining to the class. | 5 | 4.20 |
| 11. Instructor provides feedback/grade for each assignment, quiz or exam within 1 or 2 weeks for major assignments. | 5 | 4.80 |
| 12. The instructor meets class and starts class on time, do not answer this question if class was online. | 5 | 5 |
| 13. This instructor has challenged me to think. | 5 | 4.20 |

*Mean scores (or the average score) is based upon student responses of 5-Strongly Agree, 4-Agree, 3-Neither Agree nor Disagree, 2-Disagree and 1-Strongly Disagree. If students responded with Not Applicable, their scores are not counted in the N, or in the Mean score--so they do not affect the average.*

*A score of zero indicates no responses were received. Zero does not mean a student scored you as a zero.*

**14. What could the instructor do to improve this class?**

Help students understand notes better.

Nothing

Homework assignments were not helpful in learning the material needed to pass the class.

Not sure

**15. What do you like most about this class?**

The curve.

I love the fact that he teaches what he pertains into everyday life. He makes learning about anatomy fun and exciting. i most enjoy the fact that he will actually sit and talk with you about something your not understanding, until you do.

Instructor was extremely knowledgable on subject matter. I feel like I learned a lot.

Enjoyed learning more. And the way the professor explained each thing we learned. The style in which they teached

I have enjoyed every day in this class. Regardless of all the info to take in and learn, which is alot, the class was enjoyable and interesting. Would recommend Harmon for this class.

**EXHIBIT C**

# Exhibit D



# Memo of Counseling

Date:  12/08/2022

To:      Michael Harman

From:  Janene Dotts, Director Human Resources

The purpose of this memo is to provide a summary of issues related to your job performance over the past approximately six months that need to be corrected in order to adequately perform your job duties, conform with TVCC Board policies, and continue your employment. These issues (which are attempted to be summarized by number) include the following:

Issue No. 1 – Creating a Negative Workplace Environment and Wasting College Resources:
Spring 2022 through Fall 2022: You have wasted college resources and created a negative environment related to the overload issue you raised. HR provided documentation to you on 06/09/2022 from the Admissions & Registrar's Office confirming that Dustin Miller dropped BIOL 2402 ATH07 on Tuesday, January the 18th.  Despite this evidence, you have continued to question Administration regarding the Spring 2022 overload.

While it is certainly okay to ask questions regarding your overload pay, being harassing, involving the entire department and taking up excessive amounts of the department chair's time and resources is not acceptable. You have involved numerous employees, cornering them in their offices asking them for information, and making them feel uncomfortable. Your co-workers have a right to be free from such harassment and not to be involved in your personal affairs. You have taken too much of the department chair's time on this issue. The chair is over the whole department and it is not workable for a chair to spend as much time on one employee as it does the entire rest of the department. It is a waste of college time and resources. The time and attention devoted to this issue while at work is not conducive to a good working atmosphere. You are too focused on this issue and it is creating a very negative environment. You are becoming unmanageable and unreasonable and this needs to stop.

Issue No. 2 – Anger/Unprofessional Behavior:
Your co-workers have expressed concern about your explosive behavior. As you know, Human Resources had to speak to you a few months ago because of your aggressive behavior at a meeting. It is not acceptable to cut off your supervisors, yell, slam things, pound fists or the like. You are creating a very negative atmosphere and it affects the entire department.

Issue No. 3 – Creating False Theories and Being Difficult:
You have told co-workers that TVCC is cheating you out of money, that administration is trying to run you off, that TVCC is hiding classes on the internet, and that registration is trying to steer students from your classes. These opinions or theories have no basis in fact and are not appropriate to espouse during the course and scope of your employment. While at work, you represent TVCC. Such comments create a negative workplace and cause others to believe you are difficult to work with, and not part of a team devoted to the college's and students' best interests. You create the impression to others that the college is out to get you, which is not

**EXHIBIT D**



# Memo of Counseling

conducive to a good work environment and violates college policy and your contract, as discussed below.

Issue No. 4 – Violation of College Policy:
TVCC Board policy DH(Local) states the Code of Conduct for Employees. Your behavior, as summarized herein, violates many of the prohibitions and/or mandates in this policy. In general, you are not performing your job duties in a professional manner that creates a positive environment or reflects well on the college. You are creating hostility and your attitude is creating a very negative energy in the department. Your aggressive and unprofessional behaviors are negatively impacting the group. You are speaking negatively about the college while at work and while representing TVCC. You are not putting the college's and its students' best interests first; you are utilizing your position to gather information for your personal gain. Violation of college policy is a material breach of your employment contract and is grounds for termination.

Issue: No. 5 – Student Complaints/Treatment of Students and Co-Workers:
Even if you understand the content of what you are teaching, providing the content in a manner conducive to learning is essential. Students have complained about this. Additional student complaints include (in summary form): testing about things not taught in class, not grading fairly, using class time to discuss personal opinions/issues, being rude and/or offensive to students via email, and having conflicts with students.

Fall 2022 – two students have dropped your classes because of instructor conflict. They will not reduce their complaints to writing for fear of retaliation.

Administration has also received several unsolicited complaints regarding your behavior from co-workers. These include: complaints regarding interaction with students, constant complaining by you, wasting their time with unsupported theories and complaints, and espousing negative theories about TVCC.

To help improve your job performance and continue your employment, you must do the following:

1. You will act professionally and respectfully at all times with co-workers, students and administration.

2. You will comply with Board policies, including but in no way limited to, the Employee Code of Conduct;

3. You will perform your job duties in a professional manner that positively reflects on the college at all times while working on campus or working off campus. You will not contribute to negativity in the department or at the college.

4. You will maintain a positive and professional work atmosphere and get along with others. You will not be aggressive toward anyone at the college at any time. This includes not yelling, slamming things, or pounding your fists, or anything similar.

**EXHIBIT D**



# Memo of Counseling

5.    You will not ask co-workers to utilize their work time and college resources to accomplish your own goals.

6.    You will not speak negatively about the college while in the course and scope of your employment or use college resources for your own personal reasons.

7.    You will put the best interests of the college and its students first.

8.    You will not knowingly make false or damaging statements about the college.

9.    You will not utilize your position to make others perform personal work for you.

10.   You will not use college time or resources for your own vendettas or grievances, including not asking other employees to commit time, effort, or college resources towards same. You will not harass co-workers by asking them to do work for you related to your grievances/personal issues.

11.   You will not monopolize the time of the department chair or cause the department chair to spend excessive time on your personal grievances.

It is essential that the issues set forth herein cease immediately, no additional issues or policy violations arise, and that the mandates/requirements indicated herein are strictly followed. Failure to do so will subject you to discipline up to and including non-renewal of your contract or termination of your employment. Please note that the mandates set forth herein have no time limit and will continue indefinitely, as will the stated consequences for failing to comply with same.

You may respond to this Memo of Counseling in writing and that response will be placed in your personnel file. Signing this form does not indicate agreement, but only signifies you have been informed of the above action and that you understand and acknowledge the contents and the potential consequences of non-compliance and that you received a copy of this Memo of Counseling.

_____          _____
Employee Signature                                        Date

_____          _____
Supervisor Signature                                       Date

_____          _____
HR Witness Signature                                       Date

Page 3 of 3

**EXHIBIT D**

# Exhibit E



TRINITY VALLEY
COMMUNITY COLLEGE

OFFICE OF THE PRESIDENT

ATHENS CAMPUS
100 Cardinal Drive
Athens, Texas 75751
903-677-TVCC

KAUFMAN CAMPUS
800 Ed Hall Drive
Kaufman, Texas 75142
972-931-4309

PALESTINE CAMPUS
2970 North State Hwy. 19
P.O. Box 2530
Palestine, Texas 75802
903-729-0256

TERRELL CAMPUS
1200 East Interstate 20
Terrell, Texas 75161
972-563-9573

TERRELL
HEALTH SCIENCE CENTER
1551 TX-34
Terrell, Texas 75160
469-614-3800

TDCJ
CORRECTIONAL EDUCATION
2970 North State Hwy. 19
Palestine, Texas 75803
903-723-7008

February 23, 2023

Dear Mr. Harman,

I am writing this in response to our meeting held on February 9, 2023, related to your grievance dated January 17, 2023, which you sent to my attention ("Grievance"). As you indicated, the Grievance involves employees at Levels 1 and 2 of the grievance process outlined in Board policy DGBA(LOCAL). Thus, your Grievance started with my office at Level 3, under that same policy at your request. As you also requested, you had a representative attend the meeting with me via phone conference. You submitted an "Addendum" to your grievance on February 9 that was 33 pages long, plus voluminous exhibits. Some of the issues raised in this Addendum were not raised in your original Grievance. However, I have considered same in making my decision herein.

After reviewing your written Grievance, any documents you submitted to support same ("Addendum"), meeting with you, and considering all relevant information available to me, I find no merit in your Grievance (including matters raised in the Addendum), and thus it is denied in its entirety.

The basis for this decision is that I find no violation of TVCC policy or applicable law. Your Grievance is based on the Memorandum of Counseling given to you on December 8, 2022 ("MOC"), other than the Public Information Act violations you added in your Addendum and what appears to be a new complaint regarding your pay. The college has a right to counsel its employee on matters related to job performance, professional behavior, impacts on the effectiveness of a department and complaints from co-workers. The MOC does not violate any policies or laws. It was given to you and you had a right to respond to same. You have no right to appeal a MOC being given to you. While you may disagree with the content of the MOC, your supervisors have every right to counsel you on job related issues and doing so does not violate the policies and laws cited in your Grievance. No negative employment action has been taken against you. You have been counseled and given a chance to improve/correct job performance issues if you wish to continue your employment at TVCC.

With respect to the Texas Public Information Act ("PIA") violations raised in your Addendum, that is not timely and is not an employment matter. Whether the PIA was violated has nothing to do with your employment at TVCC and is not within the purview of DGBA(LOCAL). Further, any

Trinity Valley Community College does not discriminate on the basis of race, color, national origin, sex, disability or age in its programs or activities. For questions or concerns regarding discrimination based on disability, contact ADA/Section 504 Coordinator, 100 Cardinal Drive, Athens, TX 75751, 903-675-6224, disability@tvcc.edu. For all other questions or concerns

**EXHIBIT E**

complaint related to your "backpay" is time barred. Additionally, neither grievance is substantiated.

If you wish to appeal this decision, please follow the strict requirements and timeframes set forth in Level 4 of DGBA(LOCAL), which you have referenced in your Grievance.

Respectfully,

Dr. Jerry King
President
Trinity Valley Community College

**EXHIBIT E**

3

# Exhibit F



TRINITY VALLEY COMMUNITY COLLEGE
**POLICE DEPARTMENT**
100 Cardinal Drive
Athens, Texas 75751

Phone:   (903) 675-6235
Website:   www.tvcc.edu/police

*Heath Cariker, Chief of Police*

TO:  Michael Harman (DOB: 11/23/64)
From:  Heath Cariker, Chief of Police
RE:  Trespass Warning
Date:  05/15/24

This letter is to advise you that your presence on any property of Trinity Valley Community College District (TVCC) is prohibited as of May 15, 2024.  If you remain or return to the property of TVCC without the consent of the TVCC Police Chief or his designee, you may be arrested and charged with criminal trespass (Texas Penal Code 30.05).  If there is reason for you to temporarily enter TVCC property, you must be authorized by the TVCC Police Chief.  This warning will expire on May 15, 2026.  You may direct any questions regarding this warning to the TVCC Police Chief at (903) 675-6235.

Heath Cariker
Chief of Police

**EXHIBIT F**

## TRINITY VALLEY COMMUNITY COLLEGE
## POLICE DEPARTMENT
100 CARDINAL DRIVE, ATHENS, TEXAS 75751
(903) 675-6235

# CRIMINAL TRESPASS WARNING

On the date of signature, I have been advised that my presence on the Trinity Valley Community College (TVCC) campus is prohibited. By my signature below, I understand that if I remain or return to the TVCC property indicated without the consent of the TVCC Police Chief or his designee, I may be arrested and charged with criminal trespass (Texas Penal Code 30.05).

| | |
|---|---|
| ✓ All TVCC Property | ___ TVCC Housing |
| ___ TVCC Athens Campus | ___ TVCC Kaufman Campus |
| ___ TVCC Palestine Campus | ___ TVCC Terrell Campus |
| ___ TVCC Ranch | ___ Other:_____ |

Person Warned: _Michael Harman_

DOB: _11/23/64_ DL Info:_____

Signature: _____ Date: _05/16/24_

Witness:_____ Date:_____

Officer: _Carike_ Date: _05/16/24_

Case#:_____

For questions regarding this warning contact the
TVCC Chief of Police at (903) 675-6235.

**EXHIBIT F**