**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| MICHAEL HARMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 6:24-cv-401-JDK |
| | § | |
| TRINITY VALLEY COMMUNITY | § | |
| COLLEGE, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Trinity Valley Community College ("TVCC") moves for summary judgment on the claims brought against it by Michael Harman, a former professor.

Harman was employed as a science professor at TVCC for more than a decade. During the last several years of his time at TVCC, Harman became embroiled in various disputes with the TVCC administration.  In 2024, his term employment contract was not renewed after it expired.  Harman now brings the following claims against TVCC pursuant to 42 U.S.C. § 1983: (1) violation of the Fourteenth Amendment—deprivation of property interest without procedural due process, (2) violation of the First Amendment—First Amendment retaliation, and (3) violation of the Fourth and Fourteenth Amendments—restraint on an individual's freedom of movement.  Harman also brings a state law claim for breach of contract.

All of Harman's claims fail as a matter of law.  Harman's claim of deprivation of property interest fails because he does not identify a constitutionally protected property interest—a point Harman does not contest in his summary judgment

1

response.  Similarly, his First Amendment retaliation claim fails because Harman does not show that his speech was entitled to First Amendment protection.  Rather, the evidence conclusively demonstrates that Harman's complaints to TVCC concerned his own personal experience at the College, which is not a matter of public concern.  Harman's "freedom of movement" claim fails because it is based on the mere issuance of a criminal trespass order, which is not a restraint on an individual's freedom of movement.  And, finally, Harman's breach of contract claim fails because there is no evidence that TVCC failed to pay Harman what it owed him.  The evidence instead shows that Harman was paid in accordance with the terms of his contracts, and Harman does not point to any contrary evidence demonstrating error regarding TVCC's calculations.

Accordingly, the Court **GRANTS** TVCC's motion for summary judgment (Docket No. 13) and enters summary judgment for TVCC on all counts.

## I. Background

Michael Harman was a science professor at TVCC's Athens campus for twelve years on successively renewed one-year term contracts.  *See* Docket No. 16, Ex. 1 ¶ 3 (Affidavit of Michael Harman (herein, "Harman Affidavit")).  After May 2024, his teaching contract was not renewed for the following year.  *Id.*  The events leading up to this non-renewal began in 2022.

Before addressing this dispute, the Court explains (A) the relevant features of TVCC's "class overload" system, and (B) TVCC's open educational resource ("OER") system.

## A. Overload Pay System

Professors at TVCC are sometimes given the opportunity to teach "overload" courses. These are additional courses beyond the scope of their employment duties. Docket No. 13, Ex. 1 ¶ 4 (Affidavit of Janene Dotts, Ph.D., Associate Vice President of Human Resources at TVCC (herein, "Dotts Affidavit")). Overload courses are created and offered to professors at TVCC's discretion based on need and student enrollment. *Id.* The opportunity to teach these courses is not guaranteed; professors' employment contracts state that any payment for teaching overload classes is not part of the compensation referenced in their contract with the College. *Id.* ¶ 5. In particular, Harman's September 2021 to May 2022 contract states:

> Acceptance of supplemental duties, including the teaching of an overload, is voluntary on the part of the employee. No property right to continued employment exists in such supplemental duties or stipends and such duties and stipend may be terminated for any reason or no reason at employer's sole discretion.

Docket No. 13, Ex. 2 at 1 (emphases omitted). Harman's 2022–2023 and 2023–2024 contracts included the same terms. *Id.*, Exs. 3, 4.

Pay for overload classes is calculated separately from a professor's base pay. Dotts Affid. ¶ 6. TVCC issues an annual overload policy setting the minimum number of students required for a class to "make." This policy also describes how a professor will be paid based on whether a class makes: If the class makes, the professor is paid the flat amount set by that year's overload policy; if the class does not make, the professor's overload pay is calculated on a per-student basis. *Id.* ¶ 8.

3

## B. OER Designations

An OER designation refers to courses that utilize open educational resources instead of commercial textbooks to reduce textbook costs for students. Dotts Affid. ¶ 12. In 2022, TVCC instituted new policies for obtaining an OER designation for any given course. *Id.* Some courses that previously had OER designations lost that status until they were formally re-designated under the new policies. *Id.* At least one of Harman's courses fell into the latter category, while some other professors' courses did not. *Id.* Neither party submits any summary judgment evidence explaining how or why any given course might lose or maintain its OER designation under TVCC's new system.

## C. Relevant Factual Allegations

In the Spring of 2022, Harman alleges that he became concerned that he and other teachers were being underpaid and that TVCC administrators were not complying with school policies. According to Harman, the custom at TVCC was to give an instructor whose overload class was underenrolled (not "made") the option to be paid "per head" (resulting in less pay than a "made" class) or to cancel the class. Harman Affid. ¶ 4. In Spring 2022, when TVCC notified Harman of the amount he would be paid for Spring overload courses, Harman identified what he believed was an error in TVCC's overload calculation for one of his courses. *Id.* ¶ 5. Harman then sent several emails to TVCC administrators expressing concerns and inquiring about his overload pay. Dotts Affid. at ¶ 10. TVCC investigated these complaints and determined that Harman's overload pay was calculated correctly. *Id.* ¶ 11. Around

this time, Harman was also upset that at least one of his courses had lost its OER designation.   Harman Affid. ¶ 7.

Harman began submitting Texas Public Information Act ("TPIA") requests to the TVCC administration seeking information relating to his concerns about overload pay and OER designations.  Harman Affid. ¶ 8; Dotts Affid. ¶ 14.  TVCC alleges that these requests became hostile in nature when Harman did not find the received information useful, a characterization that Harman disputes.  Docket No. 16 ¶ 14.

To voice his concerns and "seek remedies," Harman Affid. ¶ 9, Harman scheduled a meeting with the Assistant Director of Human Resources, Richard Burrus.  The meeting was held on December 6, 2022.  Harman alleges he was ambushed at the meeting.  *Id*. ¶ 10.  According to Harman:

> Burrus [and] HR Director Dotts [and others], . . . proceed[ed] to retaliate against me by berating me for over 30 minutes.  Burrus stated during the meeting that he knew I had documents to present to them, but that instead, we [were] there to talk about my behavior.

*Id*.  According to a transcript of the meeting, attached to TVCC's motion for summary judgment at Exhibit A, Burrus began with the following:

> I have received all sorts of information, complaints in regards to you going to people and asking for their schedules, asking for information. And it's got to the point where it's percolating up to where H.R. has collected significant documentation.  And so I will let you know that we have been in discussions with our legal counsel over the past five months as to what our next steps are.  And so at the at the end of the day, what is going to going to occur is we're going to discuss the things.  We have a memo of counseling that we're going to sign.  You can sign if you wish or not.  If you don't want to, that's fine.  But at the end of the day, we're going to have an understanding of what the expectations are whenever you walk out of here.

Exhibit A at 6–7.

At this point, Harman was handed the Memorandum of Counseling that forms the basis of his claims in this lawsuit.  Harman alleges that the Memorandum was "defamatory" and accused him of exhibiting unprofessional and aggressive conduct. Harman asserts that the Memorandum was:

> a hodgepodge of witch hunt allegations, ranging from accusing me of promulgating conspiracy theories, to informal student complaints, to taking up too much of my Chair's time.  The MOC accused me of telling co-workers "that administration is trying to run [me] off" and creating "the impression to others that the college is out to get [me], which is not conducive to a good work environment and violates college policy and [my] contract." In short, the MOC and its associated ambush meeting were retaliatory for my having complained about the underpayments and incorrect OER designations, for making TPIA requests, and for having complained about the manner in which those requests for [sic] handled.

Harman Affid. ¶ 11.  The Memorandum states as follows, in part:

> The purpose of this memo is to provide a summary of issues related to your job performance over the past approximately six months that need to be corrected in order to adequately perform your job duties, conform with TVCC board policies, and continue your employment.  These issues . . . include the following:
>
> 1. Creating a Negative Workplace Environment and Wasting College Resources.
>    - Spring 2022 through Fall 2022: HR provided documentation to you . . . from the admissions and registrar's office confirming that [student] dropped the BIOL 2402 ATH07 on Tuesday, January 18th.  Despite this evidence, you have continued to question the administration regarding the Spring 2022 overload.  While it is certainly okay to ask questions regarding your overload pay, being harassing, involving the entire department and taking up excessive amounts of departmental chair's time and resources is not acceptable.   You have involved numerous employees cornering them in their offices, asking them for information and making them feel uncomfortable.  Your coworkers have a right to be free from such harassment and not be involved in your personal affairs.
> 2. Anger/Unprofessional Behavior.

3.  Creating False Theories and Being Difficult.

- You have told co-workers that TVCC is cheating you out of money, that administration is trying to run you off, that TVCC is hiding classes on the internet, and that registration is trying to steer students from your classes. These opinions or theories have no basis in fact and are not appropriate to espouse during the course and scope of your employment.

4.  Violation of College Policy.

5.  Student Complaints/Treatment of Students and Co-Workers.

- Students have complained about . . . not grading fairly . . . and two students have dropped your classes because of instructor conflict.

Docket No. 13, Ex. 5. Harman signed the Memorandum, stating that he understood and acknowledging the contents and potential consequences of non-compliance. *Id.* The Memorandum had no adverse impact on the salary, compensation, or benefits Harman received as an employee of TVCC. *See id.*; Dotts Affid. at ¶ 18.

On January 17, 2023, Harman filed a formal grievance denying the allegations in the Memorandum and asserting that they were retaliation against him for protected First Amendment activities. Harman Affid. ¶ 12. Harman's grievance was denied by the President of TVCC, and then by the Board of Trustees. Harman alleges that the denial of his grievance by the Board was retaliation against him for his TPIA requests and speech. *Id.* ¶ 13.

Nonetheless, Harman was renewed on a term contract for the 2023–2024 school year. Harman asserts that he was again underpaid for his overload class in Fall 2023, a fact TVCC's payroll allegedly "admitted . . . but never explained why." Harman Affid. ¶ 14. In April 2024, a high school student enrolled in one of Harman's classes through a dual credit program. Dotts Affid. ¶ 22. During an online video-

proctored exam, the student looked at her phone in violation of Harman's syllabus. *Id.* When Harman contacted the student about this issue, she admitted to using her phone but cited an emergency with her boyfriend as the reason and denied having cheated with her phone. *Id.* Harman offered the student an opportunity to retake the exam in person, but she claimed she could not get to the library due to transportation issues. Harman Affid. ¶ 16. Harman told the student she would receive a failing grade on the test and the course. *Id.* The student contacted TVCC about the matter prior to the withdrawal deadline for the Spring 2024 semester, and TVCC allowed her to withdraw. Dotts Affid. ¶ 22. This withdrawal resulted in the student receiving a "W" designation, which is not a grade, rather than an "F." Harman felt this was a violation of his academic freedom, so he filed a formal grievance directly with the Board of Trustees. Harman Affid. ¶ 17. The grievance was dismissed as untimely.

Just over a week later, TVCC elected not to renew Harman's employment contract and allowed it to expire at the end of May 2024. Harman appealed TVCC's decision not to offer him a new contract for the 2024–2025 academic year, alleging that the decision was prohibited retaliation for his protected First Amendment activity, the filing of grievances, and his past criticisms of the TVCC administration. *Id.* ¶ 18. The Final Determination Report from the panel that heard Harman's appeal determined that "there was insufficient evidence to prove the non-renewal was due to retaliation or based on a violation of [Harman's] rights." Docket No. 13, Ex. 6.

After Harman's contract was not renewed, he was issued a criminal trespass

warning prohibiting him from returning to TVCC's campus.  Docket No. 17, Ex. 6.

Harman filed suit in this Court in October 2024.  He alleges that TVCC violated his

constitutional rights and breached his term contract.

Following discovery, TVCC moved for summary judgment on all claims.

## II. Analysis

Summary judgment is proper when the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue of material fact and that the moving party is entitled to

judgment as a matter of law.  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S.

317, 323–25 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.

1998).  A fact is material only if it will affect the outcome of the case.  *See Anderson

v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine only if the

evidence could lead a reasonable jury to find for the nonmoving party.  *See id.*  In

determining whether a genuine issue of material fact exists, the Court views all

inferences drawn from the factual record in the light most favorable to the nonmoving

party, here Harman.  *Id.*; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 587 (1986).

After the moving party has made an initial showing that there is no evidence

to support the nonmoving party's claim, the nonmoving party must assert competent

summary judgment evidence to create a genuine fact issue.  *Matsushita*, 475 U.S.

at 586.   Mere conclusory allegations, unsubstantiated assertions, improbable

inferences, and unsupported speculation are not competent summary judgment

9

evidence.  *See Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).  The nonmoving party must identify evidence in the record and articulate how that evidence supports his claim.  *Ragas*, 136 F.3d at 458.  Summary judgment must be granted if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322–23.

### A. Evidentiary Objections

Harman raises several evidentiary objections to Defendant's summary judgment evidence.  Docket No. 16 at 8–13.  The Court addresses each in turn.

Harman first objects to paragraph 5 of Dotts's Affidavit, which states that certain language appearing in Exhibits 3 and 4 to Dotts's Affidavit is also included in Exhibit 2.  According to Harman, "such statement is demonstrably false."  This objection is **OVERRULED**.  Paragraph 5 of Dotts's affidavit does not say anything about certain language in Exhibits 3 and 4, and thus the objection is meritless.

Harman next objects to paragraph 7 of Dotts's Affidavit, which refers to overload teaching by TVCC faculty as being "on an at-will basis." According to Harman, this is an improper legal opinion by a non-expert witness.  In the alternative, Harman argues that this testimony violates the best evidence rule.  The objection is **OVERRULED**.  The contracts themselves state that accepting an overload class is voluntary, *see, e.g.*, Docket No. 12, Ex. 2, and Dotts is qualified to describe the contracts.

Harman objects to paragraphs 9 and 10 of Dotts's Affidavit, which, according

to Harman, combine to convey the impression that on the day in January 2022 that TVCC determined a class would make (January 20), Harman was informed which of his classes would make and which would not, and could then have dropped a low-enrollment class for which he would not be paid in full. This objection is **OVERRULED.**  This is not an evidentiary objection, but an objection to Defendant's characterization of the facts.

Harman further objects to paragraph 10 of Dotts's Affidavit as based on communications which would be the best evidence of their contents, but which are not provided as exhibits to support her conclusory descriptions thereof.  This objection is **OVERRULED**.  Dotts's affidavit is not offered to prove the contents of the communications.  Therefore, the best evidence rule does not apply.  *Tremont LLC v. Halliburton Energy Servs., Inc.*, 696 F. Supp. 2d 741, 760 (S.D. Tex. 2010) ("The best evidence rule does not apply to evidence not offered to prove the contents of a writing.").

Harman next objects to paragraphs 11 and 12 of Dotts's Affidavit as conclusory and as failing to show how the affiant gained personal knowledge of the statements.  This objection is **OVERRULED**.  An affiant need not explicitly assert that the affidavit is based on personal knowledge.  *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005).  Rather, personal knowledge may be demonstrated if the facts stated "reasonably" fall within the "'sphere of responsibility'" of the affiant as a corporate employee.  *Id.*  And here, Dotts is Associate Vice President of Human Resources at TVCC; knowledge of TVCC's course policies is thus

11

reasonably within her sphere of responsibility.

Harman objects to paragraph 13 of Dotts's Affidavit as offering "conclusory" characterizations of Harman's public information requests and follow-ups. Harman argues that this testimony violates the best evidence rule. This objection is **OVERRULED** for the same reasons stated above.

Harman objects on hearsay grounds to paragraph 15 of Dotts's Affidavit, which states that the TVCC administration continued to receive informal complaints regarding Harman from both faculty and students. "Multiple faculty members complained that Harman would talk loudly in the halls or corner them in their offices, spreading negativity and disparaging TVCC." Dotts Affid. ¶ 15. Harman argues that this statement is hearsay and conclusory. The objection is **OVERRULED**. The statement is not being offered to prove that Harman was talking loudly or disparaging TVCC, but to prove that complaints were made about him. And testimony that complaints were made about a person is not hearsay. *See Galindo v. City of Roma Police Dep't*, 265 F.3d 1059 (5th Cir. 2001) (per curiam) ("[O]fficers testified that they heard complaints [from female employees] and the general basis for the allegations. This was not hearsay. The point of eliciting this testimony was to show that other women complained . . . ."); *Lumpkin v. Aransas Cnty.*, 2017 WL 25558, at *2 (S.D. Tex. Jan. 3, 2017) ("The deposition testimony regarding other people complaining about Plaintiffs' negativity is not inadmissible hearsay.").

Harman objects to the "hearsay" in paragraphs 16, 22, and 24 of Dotts's Affidavit because, Harman contends, these paragraphs do not expressly state that

12

Dotts has personal knowledge of the matters or communications related.  This objection is **OVERRULED** because the paragraphs include no hearsay and because, as stated above, the information in these paragraphs is reasonably within Dotts's sphere of responsibility.

Finally, Harman specifically objects to the consideration of the contents of the "Memo of Counseling" (Defendant's Exhibit 5) for any purpose other than the creation of the Memorandum and the circumstances under which Harman was confronted with it.  According to Harman, the complaints in the Memorandum are out-of-court statements, and to offer them in any way to prove the truth of the matters asserted therein would be inadmissible hearsay.  This objection is **OVERRULED**.  The Memorandum is not offered to prove the truth of its contents, but rather to show the reasons TVCC gave for counseling Harman.  *See, e.g.*, *Brauninger v. Motes*, 260 F. App'x. 634, 637 (5th Cir. 2007) (report containing out-of-court statements admissible when offered not for truth of the matter asserted, but to show what employer relied on in making decision to fire employee).  Moreover, the document is admitted as a business record.  *See* FED. R. EVID. 803(6).

### B. Deprivation of Property Interest

Count I alleges that TVCC deprived Harman of his "property interest without procedural due process" in violation of 42 U.S.C. § 1983.  Docket No. 1, Count I.  Specifically, Harman claims that he had a "property interest in his income from teaching" the classes for Summer 2024, which TVCC "cancelled without notice or due process."  *Id.* ¶ 4.4.  Harman also alleges that he had a property interest in the

information sought from TVCC under the TPIA, which TVCC failed to provide him. *Id.* ¶ 4.5.

To establish a procedural due process violation, a plaintiff must show, among other things, that he had a property or liberty interest protected by the Fourteenth Amendment. *Bd. Of Regents v. Roth*, 408 U.S. 564, 569 (1972). "[T]he range of interests protected by procedural due process is not infinite." *Id.* at 570; *see also id.* at 577 ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it."); *Klingler v. Univ. of S. Miss., USM*, 612 F. App'x 222, 227 (5th Cir. 2015) (per curiam) ("The protections of the Due Process Clause, whether procedural or substantive, only apply to deprivations of constitutionally protected property or liberty interests.").

Here, TVCC argues that Harman did not have a property interest in his overload classes, including his Summer 2024 classes, because his employment contract expressly stated that overload classes were "supplemental" and that "[n]o property right to continued employment exists in such supplemental duties." Docket No. 13, Exs. 2–4 ("No property right to continued employment exists in such supplemental duties or stipends and such duties and stipend may be terminated for any reason or no reason at Employer's sole discretion."). TVCC also argues that Harman had no property interest in the information he sought under the TPIA under well-established case law. *See id.* at 15 (collecting cases). TVCC also argues alternatively that Harman was afforded constitutionally sufficient due process.

14

Harman does not argue otherwise.  In fact, Harman's summary judgment response makes no attempt to defend this claim, fails to cite any evidence to support it, and does not oppose TVCC's motion for summary judgment on it.  Docket No. 16. Accordingly, the Court grants TVCC's summary judgment motion on Count I.  *See, e.g.*, *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) ("[T]he party opposing summary judgment is 'required to identify specific evidence in the record, and to articulate the "precise manner" in which that evidence support[s] their claim.'" (quoting *Forsyth,* 19 F.3d at 1537); *House v. Interline Brands, Inc.*, 464 F. App'x 402, 404 (5th Cir. 2012) ("The opponent must support its opposition to summary judgment by citing to materials in the record." (citing FED. R. CIV. P. 56(c)); *Johnson v. Braums, Inc.*, 2025 WL 2428811, at *2 (N.D. Tex. May 27, 2025), *report and recommendation adopted*, 2025 WL 1805860 (N.D. Tex. July 1, 2025) ("The Federal Rules of Civil Procedure require parties requesting or opposing summary judgment to support their arguments by citing to materials that are entered in the judicial record of the case, or by showing through argument that the citations of the adverse party do not support the associated position.").

### C. First Amendment Retaliation

Count II alleges that TVCC deprived Harman of his "freedom of speech and academic freedom" in violation of the First Amendment and § 1983.  Docket No. 1, Count II.  Specifically, Harman alleges that he made constitutionally protected "expressions of concern and inquiries" into TVCC's calculation of overload pay and lack of transparency concerning OER certifications.  *Id.* ¶ 4.7.  He also alleges that

15

he "ma[de] TPIA requests" and was prevented from failing a cheating student in violation of his First Amendment freedoms. *Id.* ¶ 4.8. Harman claims that TVCC then retaliated against him by issuing the disciplinary Memorandum of Counseling and non-renewing his contract. *Id.* ¶ 4.10.

For a public employee to establish a claim of retaliation in violation of the First Amendment, he must show: "(1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016) (quotation marks and citation omitted).

Harman's claim fails because he has not shown that any of his speech addressed a matter of public concern entitling it to First Amendment protection. Whether speech is a matter of public concern is a question of law. *Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983). When a public employee speaks in his role as an employee, and not as a citizen, "a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Id.* at 147. In fact, if the alleged speech cannot be fairly characterized as constituting speech on a matter of public concern, it is unnecessary for the Court to scrutinize the reasons for the Plaintiff's discharge, or in this case, for alleged retaliation. *Id.* at 146. "When employee expression cannot be fairly characterized as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their

16

offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Id.*

Here, Harman's complaints about the overload pay and OER designations were limited to why *Harman* was not receiving overload pay and why *Harman's* course did not maintain an OER designation.  *See* Docket No. 17, Ex. 4 at 4 (Harman seeking "records that . . . show I was paid fairly"); Harman Affid. ¶ 7 (Harman stating that "I became concerned over the disparate treatment I experienced by TVCC as to how certain classes were assigned an 'OER' designation . . . ."); *see also* Docket No. 13, Ex. 5 (Memorandum of Counseling) (reflecting that Harman's complaints were limited to his own personal issues with TVCC and were not general, community-wide concerns); Docket No. 17, Ex. 4 at 4 (Harman stating that "[n]ot providing this material is delaying the meeting to fix my payroll matter.").  As the Fifth Circuit has long held, an employee's "voicing his dissatisfaction with managerial decisions personal to him and other employees . . . does not rise above an individual employee's complaints and is not a matter of public concern." *Randolph v. Tex. Rehab. Comm'n,* 214 F. App'x 424, 427 (5th Cir. 2007); *see also Gibson v. Kilpatrick*, 838 F.3d 476, 485 (5th Cir. 2016) ("Internal personnel disputes and management decisions are rarely a matter of public concern.").

Harman argues that his grievances about pay and OER designations addressed a matter of public concern because they were "concerned with a public institution that is funded by taxpayers."  Docket No. 16 at 16.  But complaints about an employee's personal experience working for a taxpayer-funded institution are not

17

protected speech. *Gibson*, 838 F.3d at 485 (noting that courts "must be careful not to conclude that speech is a matter of public concern merely because it involves public employees"); *see also Dorsett v. Bd. of Trs. for State Colleges & Universities*, 940 F.2d 121, 123–24 (5th Cir. 1991) (professor's internal complaints about "the assignment of summer and overload classes to himself and to his friends in the department" were "matters of private, not public, interest"). Harman also claims that his criticisms were not personal to him but addressed "the employment of all faculty members at TVCC." Docket No. 16 at 16. Harman, however, cites no evidence to support this point. *See Vasquez v. Chacon*, 390 F. App'x 305, 307 (5th Cir. 2010) (reasoning that "the nonmoving party must identify evidence in the record that 'articulate[s] the precise manner in which that evidence supports his or her claim'" (quoting *Ragas*, 136 F.3d at 458)). Rather, as noted above, the evidence shows that Harman's criticisms about overload pay and OER designations were limited to *his* pay and *his* course.

Nor were Harman's "TPIA requests" protected speech. *See, e.g.*, *Dallas Police & Fire Pension Sys. v. Alexander*, 2020 WL 9936144, at *11 (E.D. Tex. Mar. 26, 2020), *report and recommendation adopted sub nom. Police v. Alexander*, 2021 WL 4260494 (E.D. Tex. Sept. 20, 2021) ("TPIA requests are not constitutionally protected speech"; "Section 1983 does not protect [a requester's] state rights under Texas statutes."); *Johnson v. Town of Prosper, Texas*, 2025 WL 1811510, at *19 (E.D. Tex. July 1, 2025) ("[T]he First Amendment does not protect TPIA requests."). In fact, in his summary-judgment response, Harman concedes that "TPIA requests do not qualify as speech

18

under the First Amendment." Docket No. 16 at 13. Harman thus argues that he has "alleged retaliation for speech on broader terms"—"his [TPIA] request and his speech concerning that request." *Id*.; *see also* Harman Affid. ¶ 10 ("[I was] [e]xercising my First Amendment rights in criticizing the handling of those TPIAs."). But there is no evidence that either Harman's TPIA requests or his follow-up correspondence regarding those requests was a matter of public concern. Rather, the requests focused on payroll information and class rosters to substantiate Harman's claim that *he* was being treated unfairly. *See* Docket No. 17, Ex. 4 at 4; *cf. Johnson*, 2025 WL 1811510, at *19 (noting that speech concerning TPIA requests for "police statistics" is "a 'matter of public concern' under First Amendment protection" because they "reflect political and social dynamics in the community").

Finally, Harman's attempt to fail a cheating student is not protected under the First Amendment. In fact, Harman concedes in his summary-judgment response that "academic freedom does not encompass grading." Docket No. 16 at 17; *see Hillis v. Stephen F. Austin State Univ.*, 665 F.2d 547, 552–53 (5th Cir. 1982). Harman thus argues instead that he complained about academic interference by TVCC, which was "entitled to protection." Docket No. 16 at 17. This argument fails as well. Harman cites no evidence showing that his "expressions of concern" were anything other than complaints about TVCC's alleged interference with his own personal "academic freedom"—based on a single incident involving one of Harman's students in one of Harman's classes. There is therefore no evidence that Harman's speech on this topic addressed a matter of political, social, or other concern to the community. *Jackson v.*

19

*Texas S. Univ.*, 997 F. Supp. 2d 613, 638 (S.D. Tex. 2014) ("[S]peech related to an internal dispute regarding operation of the college, which included . . . treatment of students . . . and student dismissal . . . was not a matter of public concern."); *Dorsett*, 940 F.2d at 123 ("[D]ecisions concerning . . . administrative matters [] and departmental procedures . . . do not rise to the level of a constitutional deprivation.").

Not only did Harman's complaints focus on his own personal experience at TVCC, Harman made no effort to communicate his grievances beyond the four walls of TVCC to the general public.  This further demonstrates that Harman's speech was not a matter of public concern entitled to First Amendment protection.  *See Moore v. Miss. Valley State Univ.*, 871 F.2d 545, 551 (5th Cir. 1989) (noting that employees who filed grievances over not being retained by the university were not entitled to First Amendment protection where they made "no effort . . . to communicate these complaints to the general public" but addressed only the internal chain of command).

Because Harman has not shown that he engaged in protected speech, his claim of First Amendment retaliation fails as a matter of law.  The Court thus grants TVCC's motion for summary judgment on Count II.

### D. Restraint on Freedom of Movement

Count III alleges that TVCC deprived Harman of his "freedom of movement" in violation of the Fourth and Fourteenth Amendments and § 1983.  Docket No. 1, Count III.  Specifically, Harman alleges that TVCC's police department issued a "criminal trespass warning" prohibiting him "from stepping foot on TVCC property," thereby "severely restrict[ing]" Harman's "freedom of movement."  *Id.* at ¶ 4.15.

20

Neither in his complaint nor his response to the summary judgment motion does Harman cite any law outlining the cognizable boundaries of a claim for deprivation of "freedom of movement." To be sure, "[t]he rights of locomotion, freedom of movement, to go where one pleases, and to use the public streets in a way that does not interfere with the personal liberty of others are implicit in the first and fourteenth amendments." *Sawyer v. Sandstrom*, 615 F.2d 311, 316 (5th Cir. 1980) (quotations omitted); *United States v. Guest*, 383 U.S. 745, 759 (1966) (recognizing the right of individuals to "free movement in interstate commerce"); *Williams v. Fears*, 179 U.S. 270, 274 (1900) ("[T]he right to remove from one place to another according to inclination, is an attribute of personal liberty, and the right, ordinarily, of free transit from or through the territory of any state is a right secured by the 14th Amendment and by other provisions of the Constitution."). And a person seized by the police is entitled to challenge the government's action under the Fourth Amendment when an officer, "by means of physical force or show of authority terminates or restrains his freedom of movement through means intentionally applied." *Brendlin v. California*, 551 U.S. 249, 254 (2007).

But Harman cites no cases, and the Court has found none, holding that any "right to freedom of movement" is implicated by the mere issuance of a criminal trespass warning. In fact, as Harman himself admits in his response, "[t]he right to freedom of movement . . . protects citizens from being stopped by the police without probable cause." Docket No. 16 at 20. There is no evidence, however, that Harman was stopped by the police, and "a criminal trespass warning does not constitute an

21

arrest," *Bhombal v. Irving Indep. Sch. Dist.*, 2018 WL 2127760, at *3 (N.D. Tex. May 9, 2018). The only argument raised by Harman in his response—that a criminal trespass warning cannot serve as a substitute for probable cause—is both wrong and irrelevant here. *See Defrates v. Podany*, 2018 WL 9561796, at *4 (N.D. Tex. Aug. 6, 2018), *aff'd*, 789 F. App'x 427 (5th Cir. 2019) (holding that an officer's awareness of a criminal trespass warning provided the officer "with an objectively reasonable belief that he had probable cause to arrest Plaintiff for criminal trespass"). Harman therefore has failed to show that TVCC restricted his "freedom of movement" in a way that violates his constitutional rights.

The Court grants summary judgment for TVCC on Count III.

### E. Breach of Contract

Finally, Count IV alleges that TVCC breached a contract with Harman by retaliating against him for his "complaints and grievances against TVCC" and by underpaying him "by an estimated $30,000.00." Docket No. 1 at ¶¶ 4.18–4.19.

Under Texas law, a plaintiff alleging a breach of contract must show (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach. *Villareal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 767 (5th Cir. 2016). TVCC argues that there is no evidence that it breached any contract with Harman. The Court agrees.

First, the alleged "retaliation." As discussed above in part II.C., Harman has failed to prove any retaliation by TVCC for his complaints and grievances. Further,

22

in his summary-judgment response, Harman abandons this argument and claims that his breach of contract claim "is much more straightforward." Docket No. 16 at 20. According to Harman, his breach claim is that TVCC failed to pay him "the full and correct amount for the classes he taught." Docket No. 16 at 20.

But there is no evidence that TVCC failed to pay Harman "the full and correct amount." In his briefing, Harman focuses primarily on his pay for teaching overload courses, but the evidence demonstrates that TVCC paid Harman the proper amounts for those courses. Dotts Affid. ¶ 11 ("TVCC investigated [Harman's] complaints, determined that his overload pay was calculated correctly, and refused to pay Harman more."); Harman Affid. ¶¶ 5–6 (Harman admitting that he was paid less in 2022 because his class did not make, rather than because TVCC purposely breached a term of his contract); Docket No. 13, Ex. 5 (Memorandum of Counseling) (noting that Harman was provided with documentation from the Registrar's office that his Spring 2022 overload class did not make, and he was therefore not paid for a "made" class). The evidence also shows that TVCC notified Harman of the amounts he would be paid for the overload classes—and that Harman then voluntarily agreed to teach them. Dotts Affid. ¶¶ 9–10. Although Harman "identified what he believed was an error in TVCC's overload calculation for one of his courses," Dotts Affid. ¶ 10, Harman presents no evidence of the error or the amount he was allegedly underpaid. In fact, Harman's summary-judgment response on his breach of contract claim is a single, short paragraph in which Harman does not identify how much TVCC allegedly underpaid him, fails to cite any evidence in the record, and incorrectly states that it

was TVCC's burden to show that Harman "was not underpaid."  Docket No. 16 at 20.[1]

The Court enters summary judgment for TVCC on Count IV.

### III. Conclusion

The Court **GRANTS** TVCC's motion for summary judgment.  Docket No. 13.

All of Plaintiff's claims in this matter are **DISMISSED with prejudice**.

All other pending motions are denied as moot.

So **ORDERED** and **SIGNED** this **29th** day of **May, 2026.**

_____
JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE

---

[1]  In its summary judgment motion, TVCC references Harman's initial disclosures in which Harman provided various reasons he believed he was underpaid.  Docket No. 13 at 27–28.  As TVCC explains, however, Harman fails to provide any evidence to support these reasons or to identify which term in his contract that TVCC allegedly breached.